THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONNIE DOCKERY, Defendant-Appellant.

First District (2nd Division)   No. 1—91—3041

Opinion filed April 13, 1993.

Michael J. Pelletier, of State Appellate Defender's Office, and Paul Bradley, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Ronnie Dockery was charged with possession of a controlled substance with intent to deliver. Following a bench trial, he was found guilty and sentenced as an habitual criminal to a term of natural life in the custody of the Department of Corrections. On appeal, he contends that (1) the circuit court found him guilty of simple possession rather than possession with intent to deliver; (2) his trial counsel labored under a conflict of interest by jointly representing both him and his codefendant brother; and (3) the State failed to prove that he knowingly possessed a controlled substance with intent to deliver.

Defendant was charged with possession with intent to deliver a substance containing more than 30 grams of phencyclidine (PCP). (Ill. Rev. Stat. 1989, ch. 56½, par. 1401 (a)(10).) Defendant's brother, Gregory Dockery, and Genese Jamerson were charged with the same offense; Gregory was also charged with armed violence, unlawful use of a firearm by a felon, and delivery of a controlled substance. Thomas Almore was charged with possession with intent to deliver a substance containing less than 10 grams of PCP. Defendant and his brother retained a private attorney to jointly represent them at trial. Together, they filed a motion to quash their arrests and suppress evi-

dence, which was heard simultaneously with their trial and that of Almore, who was represented by the public defender.

At trial, Officer Victor Gurolla of the Chicago police department testified that he received information by means of a phone call that drugs were being sold from an apartment at 1802 South Millard in Chicago. On March 7, 1990, at approximately 9 p.m., he went to that address with several other officers in order to make a "controlled purchase of narcotics." The other officers waited outside as Gurolla approached the first-floor apartment. When Gurolla rang the doorbell, Gregory opened the door and asked what he wanted. When he responded that he wanted a "quarter ounce of water," a street name for PCP, Gregory admitted him into the apartment and asked for $100. Gurolla handed Gregory $100 in prerecorded bills, which Gregory placed in his right pocket. Gregory then chose an amber bottle from among several bottles on a table and handed it to Gurolla, who then left the apartment.

Gurolla went to the side of the building where the other officers were waiting. They opened the bottle and determined from the amber color and unique odor that it contained liquid PCP. Gurolla then returned to the apartment with Officers Michael McMeel and Benjamin Almazon, while two other officers remained outside to guard the exits. Gurolla rang the doorbell and Gregory again opened the door. When Gurolla announced his office, Gregory tried to retreat into the apartment, but Gurolla was able to grab him and place him under arrest. Gurolla then searched Gregory and found a loaded .32-caliber revolver and $1,690 in cash, including the $100 in prerecorded bills.

While Gurolla was occupied with Gregory, Almazon and McMeel entered the apartment and found defendant, Almore, and Jamerson sitting in the dining room. Gurolla saw defendant pick up two large foil packets and hand them to Jamerson, who was sitting across from him. Jamerson attempted to conceal the packets under her jacket, but when McMeel asked her to open her jacket, the packets fell out. Gurolla also saw Almore grab a baby food jar containing a crushed green plant from the table and run into the bathroom. Almazon followed Almore and recovered the jar.

After everyone was placed under arrest, Gurolla conducted an inventory of the items in the dining room, including an unloaded shotgun which was found leaning against the wall. The officers also found on the dining room table five amber bottles containing liquid PCP, some aluminum foil, a mask, numerous empty bottles, a packet of sandwich bags, and a scale. Based on his knowledge from many narcotics investigations, Gurolla explained that masks are worn by per-

sons working with liquid PCP due to the fumes and the odor, and aluminum foil is used to make $10 or $20 "squares" of PCP, which are then packaged in sandwich bags for street dealers.

Officer Michael McMeel testified that after Gurolla apprehended Gregory, he and Almazon entered the first-floor apartment. He saw several people sitting at a dining room table, one of whom was defendant, who gave two tinfoil packets to Jamerson, who shoved them inside her coat and held them close to her chest. He grabbed Jamerson and held open her coat, causing the two packets to fall out. When he opened the packets, he found that each contained five amber vials of a liquid he believed to be PCP. He then saw Almazon chase Almore toward the back of the apartment after Almore took a baby food jar which contained a green, plant-like substance from the table and ran from the dining room. He also saw "a roll of tinfoil, some masks, [and] several empty brown vials" on the dining room table. He explained that liquid PCP must be refrigerated to maintain its potency, and it is commonly wrapped in foil in order to keep it from freezing.

Officer Benjamin Almazon testified that when he entered the apartment, he saw defendant hand a tinfoil packet to Jamerson. He then saw Almore grab a jar from the center of the table and run out of the room. He chased Almore into the bathroom, where he saw him attempt to dump the contents of the jar down the toilet. He recovered the jar, which still contained a crushed green plant that had been adulterated with what he believed to be PCP. He then returned to the dining room, where he saw various drug paraphernalia on the table, including the foil packets recovered from Jamerson, as well as a shotgun and a handgun.

The State then offered into evidence a series of stipulations. First, the parties agreed that the amber bottle of yellow liquid that Gregory allegedly sold to Gurolla was determined to contain 8.39 grams of PCP. The parties also stipulated to the contents of the two foil packets which were recovered from Jamerson by McMeel; the packets contained 10 vials, with an estimated 83.5 grams of PCP, which was determined after four vials were randomly tested and were found to contain 33.4 grams. They also agreed that the five other vials recovered from the apartment contained 40.14 grams of PCP. Finally, they agreed that the jar recovered by Almazon contained a crushed green plant soaked in liquid PCP, with a weight of 7.7 grams. The State then rested, and the court stated that "it was going to deny [the] motion" to quash the arrests and suppress the evidence.

Defendant testified that on March 7, 1990, he lived in the first-floor apartment at 1802 South Millard. At approximately 9:30 that evening, when he opened the door in response to his doorbell, he saw Gurolla, who told him that he was under arrest for selling drugs to him. Defendant responded to Gurolla that he did not sell anything to him. Almazon entered the apartment through the front door, while McMeel and three other officers came in through the back. Gurolla then searched defendant and asked him for the money. Defendant replied that he had none. McMeel then searched Gregory and found some money on him, but not as much as the police claimed.

During cross-examination, defendant stated that he had been home for approximately one hour before the police came, and that Gregory, Almore, and Jamerson were already there when he arrived. The doorbell did not ring during that hour, but if it had, he would have opened the door because he was the "[o]nly person who answer[ed] the door" when he was home. When the police entered the apartment, the dining room table was bare. Although the police found the liquid PCP and the paraphernalia in the apartment, no PCP was sold in the apartment that night. Though there was a shotgun in the apartment, it was kept in the bedroom rather than in the dining room. Following defendant's testimony, the court denied the motion to quash the arrests and suppress evidence.

Codefendant Almore then testified. At approximately 9:30 p.m., on March 7, 1990, he was sitting in the living room at 1802 South Millard when he heard a knock on the door. Defendant answered the door, three police officers entered the apartment, and they arrested everyone in the apartment. He had no drugs with him that night and did not grab a jar from the table and run into the bathroom. The dining room table was bare before the police arrived, but the drugs and paraphernalia were found in the apartment. He had previously seen a shotgun in the apartment, but it was usually kept in the front bedroom.

In rebuttal, the State introduced certified copies of defendant's prior convictions, which included a 1983 armed robbery conviction and a 1991 conviction for theft. The State also introduced a certified copy of Almore's 1983 theft conviction. Following closing arguments, the court found defendant "guilty of unlawful possession of a controlled substance as contained in Count 2," which charged him with the "unlawful possession of a controlled substance with intent to deliver."

At the sentencing hearing, the parties stipulated to defendant's eligibility for sentencing as an habitual offender under the Habitual Criminal Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1), agreeing

that his 1977 and 1983 armed robbery convictions, combined with the present conviction, satisfied the Act's requirements. Defendant offered nothing in mitigation and was sentenced to prison for natural life.

On appeal, defendant first contends that the circuit court found him guilty of simple possession, rather than possession with intent to deliver, and therefore improperly sentenced him to imprisonment as an habitual criminal. Defendant points out that when the court announced its findings on June 3, 1991, it stated:

"[THE COURT]: As to Almore *** motion to quash [arrest and] suppress evidence denied. Finding of guilty on unlawful possession [of] 7.7 grams of a controlled substance that was found in the bottle.

As to Gregory Dockery, motion to quash arrest and suppress evidence denied. There will be a finding of not guilty as to counts 1 and 3, and [a] finding [of] guilty as to counts 2 and 4.

As to [defendant], motion to quash arrest and suppress evidence is denied. And as to him there will be a finding of guilty of unlawful possession [of a] controlled substance as contained in count 2.

\* \* \*

[ALMORE'S COUNSEL]: Judge just for clarification. As to Mr. Almore are you finding him guilty of possession with intent or straight possession?

[THE COURT]: No. I said unlawful possession."

Defendant asserts that because the court used the same language in announcing its finding concerning defendant as that for Almore, and because simple possession is a lesser included offense of possession with intent to deliver, the court in reality found defendant guilty of the lesser rather than the greater offense. The State responds that the circuit court found defendant guilty of possession with intent to deliver because it used the words "as contained in Count 2" and because it later clarified its finding on three separate occasions.

The court, at the request of the State, first clarified its finding when it examined the half-sheet and told the prosecutor that it had found defendant guilty of "whatever Count 2 says." The court reaffirmed that finding at the hearing on defendant's motion to reconsider, when the State informed the court of its intention to seek a sentence under the Habitual Criminal Act. Finally, at the sentencing hearing, defense counsel asserted that since the court had used the same words it used concerning Almore, the court must have intended

the same result, specifically, guilty of simple possession. The court responded:

> "[THE COURT]: No \*\*\*, I said as to Count 2. Count 2 charges possession of controlled substance with intent to deliver and that's what I found [defendant] guilty of. \*\*\* That's what the transcript shows."

■ Despite defendant's protestations to the contrary, we are satisfied that the court's initial usage of the phrase "as contained in Count 2," as well as the court's repeated clarifications, clearly reflect that defendant was found guilty of possession with intent to deliver rather than simple possession. Accordingly, defendant's contention that he was improperly sentenced to life imprisonment as an habitual criminal must fail.

Defendant next contends that his trial counsel labored under an impermissible conflict of interest when he represented both his brother and him at trial. Defendant asserts that his attorney was unable to advocate effectively for him without doing "serious damage" to his brother's case. He maintains that his attorney failed to use the "obvious theory of defense," and that the attorney had him testify merely to help his brother's case, thereby allowing the State to introduce damaging evidence against him. The State responds that defendant has simply presented "unsupported or speculative conflicts," and has not demonstrated that an actual conflict existed which affected the representation. We agree with the State.

Although an attorney's representation of multiple defendants with hostile interests will constitute a denial of the constitutional guarantee of effective assistance of counsel (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 349, 64 L. Ed. 2d 333, 347, 100 S. Ct. 1708, 1719), the mere fact of joint representation does not constitute a *per se* violation of that right. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 482, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178; *People v. Robinson* (1979), 79 Ill. 2d 147, 168, 402 N.E.2d 157, 167; *People v. Mendez* (1991), 221 Ill. App. 3d 868, 872, 582 N.E.2d 1265, 1268, *appeal denied* (1992), 143 Ill. 2d 644, 587 N.E.2d 1021.) Instead, a defendant must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance" (*Cuyler*, 446 U.S. at 350, 64 L. Ed. 2d at 348, 100 S. Ct. at 1719), by "point[ing] to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 18, 525 N.E.2d 30, 36, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) In order to satisfy this burden, a defendant must allege more than mere hypothetical or speculative conflicts (*Robinson*, 79 Ill. 2d at 169, 402

N.E.2d at 168; *People v. Berland* (1978), 74 Ill. 2d 286, 301, 385 N.E.2d 649, 655, *cert. denied sub nom. Wolf v. Illinois* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63), and the record must demonstrate that the defense was inhibited by the joint representation. *People v. Jones* (1988), 121 Ill. 2d 21, 30, 520 N.E.2d 325, 329.

■ Defendant argues that his attorney ignored the "most obvious theory of defense," that the drugs belonged to Gregory, and he was merely trying to help his brother by handing the foil packets to Jamerson as the police entered the apartment. However, the simple existence of alternative strategies which counsel could have relied upon will not establish an impermissible conflict of interest. Illinois courts have repeatedly held that the mere possibility that an available strategy would have helped one defendant at the expense of another is inadequate to demonstrate that their interests were hostile. (See *People v. Echols* (1978), 74 Ill. 2d 319, 327-28, 385 N.E.2d 644, 648; *People v. Durley* (1972), 53 Ill. 2d 156, 160, 290 N.E.2d 244, 246; *People v. Sanders* (1991), 209 Ill. App. 3d 366, 375, 568 N.E.2d 200, 206, *appeal denied* (1991), 139 Ill. 2d 602, 575 N.E.2d 921.) The fact that another attorney might have asserted a different theory of defense is irrelevant to our review, because "a positive basis must be found" in the record before determining that an actual conflict of interests existed. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 676, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; see also *Sanders*, 209 Ill. App. 3d at 375, 568 N.E.2d at 206.) Here, there is no "positive basis" in the record, and thus defendant has failed to satisfy his burden that an actual conflict of interests existed.

Moreover, the mere fact that the attorney allowed defendant to testify is insufficient to establish a conflict of interest. Defendant alleges that his attorney's decision to have him testify was improper because it was meant to bolster the motion "which was the only hope Gregory *** had unless the [circuit court] believed the police planted the physical evidence." The record, however, does not indicate that the attorney had defendant testify in order to bolster Gregory's case. Instead, it demonstrates that the court had already expressed its inclination to deny the motion. Thus, any attempt to bolster the motion was likely to have been fruitless. Contrary to defendant's assertions, a reasonable interpretation is that defendant's testimony was intended to support a common theory of defense, a complete and total denial of the allegations against all defendants, and therefore was intended to benefit everyone on trial. Thus, the decision to allow defendant to testify was merely a matter of trial strategy and is

therefore entitled to a strong presumption of validity. *People v. West* (1986), 142 Ill. App. 3d 876, 878, 492 N.E.2d 566, 568.

Finally, the simple fact that some damaging evidence was introduced as a result of defendant's testimony does not indicate a conflict of interest. Although defendant's admission that the drugs and paraphernalia were found in the apartment was damaging to his case, as was his testimony that he lived in the apartment, neither can be attributed to a conflict arising from the joint representation. Nor did the introduction of defendant's prior convictions in the State's rebuttal case indicate a conflict. Rather, all of this evidence was merely the result of the strategic decision to have defendant testify. Once defendant took the stand, he was subject to cross-examination and his credibility was subject to challenge. This record provides no basis for concluding that defendant's attorney labored under an impermissible conflict of interest.

Defendant last contends that the State failed to prove that he knowingly possessed more than 30 grams of a controlled substance with intent to deliver. He asserts that because the vials were wrapped in foil, there was no proof that he knew what they contained. He also maintains that reasonable doubt exists as to whether he possessed more than 30 grams of PCP because the evidence was conflicting as to the number of packets he possessed and it was unknown which packet contained the vials that were tested to determine the estimated weight of the PCP. Finally, he maintains that the circuit court failed to exclude the reasonable hypothesis that he merely handed the packets to Jamerson in order to protect his brother and that, therefore, it was improper to rely on circumstantial evidence that he intended to deliver the drugs.

A reviewing court will not set aside a conviction on the ground of insufficient evidence, unless "the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and thus creates a reasonable doubt of guilt." (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 333, 576 N.E.2d 1030.) A circuit court's determination will be reversed on appeal only if the reviewing court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.) The circuit court's findings here were not unreasonable, improbable, or unsatisfactory.

Defendant relies on *People v. Day* (1977), 51 Ill. App. 3d 916, 366 N.E.2d 895, for the proposition that knowledge is not the equivalent of possession. In *Day*, the defendant was charged with possession of 450 grams of cannabis after his car was stopped by police for a routine traffic violation. Six other individuals were in the car with him. After the officers detected the odor of cannabis, they searched the car and discovered the cannabis in a grocery bag on the floor beneath the legs of one of the passengers. The defendant was convicted of possession, but, on appeal, the conviction was reversed because there was insufficient evidence that the defendant actually exercised control over the cannabis. (*Day*, 51 Ill. App. 3d at 918, 366 N.E.2d at 897.) The appellate court held that his status as an owner-driver of the vehicle did not put him in possession of everything in the car when other passengers who might be in possession of the contraband were present. *Day*, 51 Ill. App. 3d at 918, 366 N.E.2d at 897.

■ Unlike the defendant in *Day*, defendant here was actually shown to be in control of a significant quantity of PCP. The testimony established that defendant was sitting at the dining room table and handed two packets to Jamerson as the police entered the apartment. Those two packets later were determined to contain approximately 83.5 grams of PCP, an amount stipulated to by defendant, and which he is therefore estopped from challenging on appeal. (See *People v. Baynes* (1981), 88 Ill. 2d 225, 239, 430 N.E.2d 1070, 1076.) We therefore find the holding in *Day* to be inapplicable to the case at bar.

Moreover, in his argument concerning the presence of reasonable doubt, defendant stresses Almazon's testimony that he saw defendant pass only one packet to Jamerson, and asserts that it is unclear which packet supplied the bottles which were ultimately tested to determine the estimated total weight. However, the existence of minor inconsistencies in the evidence is insufficient to raise a reasonable doubt where the trier of fact resolved them in the State's favor and the conviction is founded upon substantial and credible evidence. (*People v. Young* (1985), 133 Ill. App. 3d 886, 890, 479 N.E.2d 494, 497.) Here, the evidence supported the conclusion that defendant handed Jamerson two packets, and thus no question exists regarding the source of the bottles which were tested to determine the estimated weight of the PCP.

Similarly, the evidence demonstrates that defendant knew the contents of the packets. Because knowledge can rarely be proven by direct evidence, it can be shown by evidence of conduct which raises the inference that the defendant knew of the existence of the contraband. (*People v. Pintos* (1989), 133 Ill. 2d 286, 292, 549 N.E.2d 344, 347;

*People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767, 768.) Defendant's actions in attempting to hide the packets when the police entered the apartment, in combination with the evidence that there was much drug paraphernalia on the table, raised the reasonable inference that he knew the packets contained drugs. Because nothing in the record rebuts this inference, the circuit court properly found that defendant knowingly possessed the PCP.

Furthermore, the evidence was sufficient to prove beyond a reasonable doubt that defendant possessed the controlled substance with the intent to deliver. Contrary to defendant's assertions, our supreme court has explicitly held that "the reasonable hypothesis of innocence test is no longer viable in Illinois." (*Pintos*, 133 Ill. 2d at 291, 549 N.E.2d at 346.) Instead, the reasonable doubt standard is applied regardless of whether the case is based on direct or circumstantial evidence. *Pintos*, 133 Ill. 2d at 291, 549 N.E.2d at 346.

Intent to deliver a controlled substance is seldom amenable to direct proof and typically must be inferred circumstantially on a case-by-case basis. (*People v. Kline* (1976), 41 Ill. App. 3d 261, 266, 354 N.E.2d 46, 51.) A reasonable inference of intent to deliver arises from the defendant's possession of a quantity of contraband in excess of the amount designed for personal use. (See *People v. Birge* (1985), 137 Ill. App. 3d 781, 791, 485 N.E.2d 37, 44 (State sufficiently established intent to deliver when defendant possessed 51 pounds of cannabis); *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702-03, 479 N.E.2d 428, 432-33 (intent established where defendant had in his residence a bottle containing acetone, a bag containing rolling papers and 578.8 grams of cannabis).) Moreover, the inference may be supported by other factors, including the manner in which drugs are kept, as well as the existence of cash, drug paraphernalia, and weapons. *People v. Berry* (1990), 198 Ill. App. 3d 24, 28-29, 555 N.E.2d 434, 437; *People v. Friend* (1989), 177 Ill. App. 3d 1002, 1021, 533 N.E.2d 409, 421, *appeal denied* (1989), 126 Ill. 2d 563, 541 N.E.2d 1110; *People v. Marshall* (1988), 165 Ill. App. 3d 968, 977, 521 N.E.2d 538, 543, *appeal denied* (1988), 119 Ill. 2d 567, 522 N.E.2d 1252.

Here, several facts support the inference that defendant intended to deliver the PCP. First, the 10 bottles in the two foil packets contained an estimated 83.5 grams of PCP, or approximately 8.35 grams each. Assuming that each bottle represented the amount designed for personal use, an assumption which is bolstered by the fact that the bottle purchased by Gurolla contained 8.39 grams of PCP, the fact that defendant was found with approximately 10 times that amount raises an inference of his intent to deliver. Second, the existence of

the drug paraphernalia on the dining room table indicated that defendant intended to process and package the PCP for later sale. Third, two weapons were found in the apartment. And finally, a significant amount of cash, $1,690, was recovered from Gregory. The circuit court's finding that defendant intended to deliver the PCP was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.