*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 12-CF-1657

BERNARD WEST, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-22967-11)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued February 7, 2014                    Decided September 18, 2014)

*Deborah A. Persico* for appellant.

*Demian A. Ahn*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *Scott Ray*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

THOMPSON, *Associate Judge*: A jury convicted appellant Bernard West of misdemeanor possession of phencyclidine ("PCP")[1] and felony possession of

---

[1] The jury verdict form included the charge of possession of PCP as a lesser-included offense of the charge of possession with intent to distribute

(continued…)

liquid PCP. He contends that he is entitled to a reversal of his convictions because (1) the trial court erred in denying his motion to suppress evidence (specifically, a glass vial containing liquid PCP that was recovered from his vehicle); (2) the court abused its discretion by permitting the prosecutor to introduce an automobile registration document showing that the vehicle was registered to him, even though the government had not produced the document in response to his Super. Ct. Crim. R. 16 discovery request; and (3) the evidence was insufficient to establish that he constructively possessed the PCP. We reject these arguments but agree with appellant's further contention that his convictions merge because they are "duplicative convictions for the same offense." We therefore remand for the trial court to vacate one of the convictions but otherwise affirm.

## I. Facts

Metropolitan Police Department ("MPD") Officer James O'Bannon testified at the suppression hearing that on November 29, 2011, at around 5:30 or 6:00 p.m., he was on patrol with MPD Officer Kristopher Plumley and Sergeant Robert

---

(…continued)
("PWID") PCP. The jury apparently was unable to reach a verdict as to the PWID charge and went on to find appellant guilty of the lesser possession charge.

Chagnon when he observed a vehicle run a stop sign on Alabama Avenue, S.E. The officers effectuated a traffic stop in the parking lot of the Congress Heights Metro Station. After the vehicle parked, Officer O'Bannon approached the driver's side window and Officer Plumley approached the passenger side.[2] Speaking to appellant, the driver and sole occupant of the vehicle, through his open driver's side window, Officer O'Bannon asked appellant to produce his driver's license, registration, and insurance documents. Before appellant could do so, Officer O'Bannon also asked him to step out of the vehicle "for safety," "as [appellant] was "sweating . . . profusely," shaking, and breathing heavily "like he was in a nervous state." The officers "escorted" appellant to the rear of the vehicle, where he was "patted down for safety."[3] The officers did not find any contraband on appellant's person.[4] Officer O'Bannon then asked appellant

---

[2] Before getting out of the police vehicle, the officers had already "run the tag" on the stopped vehicle and determined that it was not stolen.

[3] Officer O'Bannon could not recall who performed this "pat down." He testified that he saw no type of weapon or bulge on appellant's person and had no information that appellant was armed or dangerous.

[4] At the hearing, Officer O'Bannon testified that appellant was not handcuffed at this point. This was consistent with the arrest report that O'Bannon prepared, which said that appellant was "unhandcuffed." During cross-examination, however, appellant's trial counsel confronted O'Bannon with the transcript from his grand jury testimony which reported that O'Bannon testified that appellant "was escorted to the rear of the vehicle *and* handcuffed." (italics added). O'Bannon testified that the court reporter for his grand jury testimony
(continued…)

whether he had any drugs or guns in the car, and appellant said, "no." Officer O'Bannon next asked appellant whether he could search the vehicle, and appellant said, "go ahead." Officer O'Bannon returned to the vehicle, shined his flashlight through the rear passenger side window, and saw a "one-ounce vial with an amber liquid in it" on the back-seat floorboard. The back-seat floorboard was uncluttered, and the vial was the only thing Officer O'Bannon saw on it. The officer opened the door "to get a closer look at the liquid" and smelled "an odor consistent with PCP." At that point, he signaled to Officer Plumley to place appellant under arrest. Officer O'Bannon wrote a ticket for appellant's stop-sign violation while appellant was in handcuffs and left the ticket inside appellant's vehicle.

When asked during cross examination whether he "kn[e]w it was PCP when [he] shined the flashlight," Officer O'Bannon said that he "had to . . . closely examine it after that" and that "when [he] stuck [his] head in the door [he] could smell the PCP at that time." Officer O'Bannon testified that, in his six years of

_____

(…continued)
must have misheard him. Officer Plumley testified that it was after Officer O'Bannon searched the vehicle that he gave the signal that appellant "should be placed in handcuffs" and placed under arrest. The trial court agreed that "the court reporter got it wrong; . . . it was not [']in handcuffs['], it was [']unhandcuffed[']." We defer to this factual finding.

experience, he has smelled PCP "thousands of times." He described the smell of PCP as "very pungent," saying, "[t]here's no other odor that smells like PCP[,]" and observed that the smell of PCP is "kind of unbearable once you break the seal . . . of a vial." Similarly, Officer Plumley testified that he had smelled PCP "numerous times" during his five years as a police officer and that it has a "very noticeable," "[v]ery strong chemical odor." He "could smell the PCP" when he stuck his head into appellant's vehicle after appellant's arrest.

Appellant also testified at the suppression hearing and gave a very different account. He testified that on the night in question, he was picking up a friend from the Metro station when three police officers approached his vehicle. The officers "swung the doors [of his vehicle] open and pulled [him] out [of the vehicle]." The officers then searched him and "took [him] to the back of the vehicle" where they handcuffed him, and then one of the officers asked for consent to search his vehicle. Appellant said, "no," but the officer "searched it anyway." After searching the vehicle for "about five minutes" while appellant was in handcuffs, the officers placed appellant in their car and took him to a police station.

During closing arguments on the suppression motion, defense counsel attacked the credibility of the officers' testimony about observing a traffic violation

and argued that the stop, the order to appellant to step out of his vehicle, the pat-down, the handcuffing that counsel asserted preceded the pat-down, and the search of the vehicle were all illegal. Counsel argued that appellant "[n]ever gave consent to search the vehicle" and questioned whether, if appellant gave consent, the consent could have been "voluntary consent under th[e] circumstances" of his having been "handcuffed and patted down."[5] Additionally, defense counsel contended that "looking inside a car and seeing . . . amber fluid in a little bottle" did not "establish probable cause to go inside the car" because "it could be a perfume bottle, it could be anything."

The court credited the officers' testimony[6] and denied the motion to suppress, recounting that appellant was "briefly patted down," crediting Officer

---

[5] The government argues that defense counsel "never connected th[is] comment to any legal authority and never articulated any argument beyond the question" and thus that appellant waived any issue of involuntary consent. We conclude, however, that counsel's comments were sufficient to "fairly apprise[]" the trial court that voluntariness was an issue. *Salmon v. United States*, 719 A.2d 949, 953 (D.C. 1997).

[6] The court "f[ou]nd on the issue of credibility in favor of Officer O'Bannon and Officer Plum[ley,]" but, in summarizing Officer O'Bannon's testimony, stated that O'Bannon "stuck his head inside the car, and at that point he smelled PCP and . . . spotted a vial on the rear floorboard containing an amber liquid" — thus implying (contrary to O'Bannon's credited testimony and thus incorrectly) that the officer saw the vial of amber liquid only after sticking his head inside the vehicle

(continued…)

O'Bannon's testimony that appellant "said yes" to the officer's question about whether he could search appellant's vehicle,[7] and finding that:

> After the police officers saw the traffic [offense] they were properly permitted to stop the vehicle. They were properly permitted to ask the driver to step out of the vehicle. In addition, there was a reason given for asking the driver to step out of the vehicle[:] the nervousness and the sweating. It was perfectly proper to do a pat down just to ensure themselves that there was no weapon. And I find the officers' testimony credible that [appellant] was not handcuffed until after the discovery of the PCP in the vehicle.

At trial, Officer O'Bannon and Officer Plumley gave testimony consistent with their suppression-hearing testimony. Officer Plumley testified additionally that liquid PCP is "[t]ypically . . . [found] in a . . . vial container that is clear" and is "usually an amber-colored liquid." Officer O'Bannon testified that the vial of amber-colored liquid was closed when he first saw it. Detective George Thomas testified as an expert witness about the common packaging of PCP. The jury heard a stipulation that "[o]n the day of defendant's arrest . . . the vehicle the defendant was driving was registered to him." The parties also stipulated that a Drug

---

(…continued)
and smelling PCP. Appellant does not dispute that Officer O'Bannon saw the vial before opening the vehicle door.

[7] "A search conducted with consent is permissible[.]" *Brown v. United States*, 983 A.2d 1023, 1026 (D.C. 2009).

Enforcement Administration analysis confirmed that the seized vial contained 26.9 grams of liquid PCP. As noted above, the jury convicted appellant of possessing PCP and possessing liquid PCP, but did not reach a verdict on the PWID charge.

## II. Denial of the Suppression Motion

On appeal, appellant no longer argues that the initial traffic stop was unlawful or that Officer O'Bannon acted unlawfully in requiring him to step out of his vehicle once it was stopped, and only in passing does he take issue with the trial court's credibility-based finding that he consented to a search of his vehicle.[8] Instead, appellant contends that the trial court erred in denying his motion to

---

[8] Appellant wisely has abandoned those arguments. This court defers to the trial court's credibility determinations, *Ruffin v. United States*, 76 A.3d 845, 849 (D.C. 2013), including in this case the court's acceptance of the officers' testimony that they stopped appellant's vehicle after observing its failure to stop at a stop sign. When police officers have objective reason to believe that a driver has committed a traffic infraction, even a minor one, they are permitted to conduct a traffic stop and may order the driver to exit the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 111 n.6 (1977) (holding that, after a "motor vehicle has been lawfully detained for a traffic violation, the "additional intrusion" of requiring a driver to exit his vehicle is "de minimis," and does not "violat[e] the Fourth Amendment's proscription of unreasonable searches and seizures"); *United States v. Glover*, 851 A.2d 473, 476 (D.C. 2004) ("Having lawfully stopped [defendant's] vehicle for a traffic violation, the officers were permitted to order [him] to get out of the car as a routine safety precaution without regard to whether they had an articulable suspicion of criminal activity or specific reason to believe that [he] might be dangerous.").

suppress because (1) his consent to a search of his vehicle was involuntary because it was "contemporaneous[]" with an unlawful pat-down; (2) his consent was given during an illegal seizure and was therefore tainted by the illegality; (3) in light of that taint, the officers were "not lawfully positioned to look inside the vehicle" and therefore could not rely on "plain view"; and (4) the officers lacked probable cause to search the vehicle because the vial's "incriminating character . . . was not immediately apparent."[9]

When reviewing a trial court's denial of a motion to suppress evidence, we "review the findings of fact for clear error and conclusions of law . . . *de novo*." *Gilliam v. United States*, 46 A.3d 360, 364 (D.C. 2012). "[W]e view the evidence presented at the suppression hearing in the light most favorable to the party prevailing below, and we draw all reasonable inferences in that party's favor." *Id.*

We begin our analysis by addressing just briefly appellant's contentions that the officers' "pat-down" of his person was unlawful, that any consent he gave to a

---

[9] In his opening brief, appellant also argued that the government may not rely on the plain-view doctrine because the officers' discovery of the vial was not "inadvertent." However, as the government correctly points out, the Supreme Court has clarified that "inadvertence . . . is not a necessary condition" of "legitimate 'plain view' seizures[.]" *Horton v. California*, 496 U.S. 128, 130 (1990).

search of his vehicle was "given contemporaneously" with that illegality, and thus that his consent was not voluntary. The government concedes that the record fails to show that the officers had reasonable articulable suspicion that appellant might be armed and dangerous to justify their warrantless pat-down of his person.[10] We therefore assume that the pat-down was unlawful, and the question becomes whether appellant's "consent to the search of his [vehicle] . . . resulted from an independent act of free will and not from any exploitation of the questionable pat-down search." *United States v. Pedroza*, 269 F.3d 821, 827 (7th Cir. 2001); *see also Hicks v. United States*, 705 A.2d 636, 641 (D.C. 1997) ("A consent obtained after an illegal seizure is not valid unless it can be shown that the consent was in fact sufficiently an act of free will to purge the primary taint of the unlawful seizure.") (internal quotation marks omitted).

---

[10] *See Glover*, 851 A.2d at 477 ("[M]erely because the police may have been justified in stopping [the defendant] and removing him from his car does not mean that [the officer] was entitled to frisk him . . . . The validity under the Fourth Amendment of those additional intrusions during a lawful traffic stop depends on whether the officer had a reasonable articulable suspicion based on objective facts and circumstances that [the defendant] was armed or had access to a weapon in the car and was dangerous.") (citing *Mimms*, 434 U.S. at 11–12 (holding that a subsequent search of the driver's person is a "second question" and requires the officer to "reasonabl[y] conclude[] that the person whom he . . . legitimately stop[s] might be armed and presently dangerous")); *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) ("To support an accompanying patdown [after a *Terry* stop], there must be a reasonable basis to think that the person stopped is armed and dangerous.") (internal quotation marks omitted).

"[T]he voluntariness of a consent to search is 'a question of fact to be determined from all the circumstances[.]'" *In re J.M.*, 619 A.2d 497, 500 (D.C. 1992) (en banc) (quoting *Schneckcloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973)). In this case, the trial court did not make an explicit finding about the voluntariness of appellant's consent to the search of his vehicle.[11] We likewise do not decide the issue, because we are able to decide the appeal on another basis, discussed below — that Officer O'Bannon was lawfully positioned to see the vial of amber liquid in plain view in appellant's vehicle and, having seen it, had probable cause to search the vehicle.

Under the so-called plain-view exception to the Fourth Amendment warrant requirement, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *accord Umanzor v. United States*, 803 A.2d 983, 998–99 (D.C. 2002) (citing *Horton v. California*, 496 U.S.

---

[11] More particularly, because the court did not recognize that the officers lacked reasonable articulable suspicion of dangerousness to support the pat-down (as noted above, the court found that "[i]t was perfectly proper [for the officers] to do a pat down just to ensure themselves that there was no weapon"), the court made no finding about whether appellant's consent was rendered involuntary by the unlawful pat-down.

128, 136–37 (1990)). Further, under the so-called automobile exception to the Fourth Amendment warrant requirement, when police have probable cause to believe that a vehicle contains contraband, they may search the vehicle without a warrant. *Holston v. United States*, 633 A.2d 378, 385 (D.C. 1993) (citing *Carroll v. United States*, 267 U.S. 132 (1925)).

Appellant argues that Officer O'Bannon was not lawfully positioned to see the vial of amber liquid because "[t]he unlawful pat-down combined with the officers' 'utter lack of diligence' in pursuing the purpose of the traffic stop" "delayed the lawful seizure" and "converted what might otherwise have been a lawful traffic stop to an unlawful seizure consumed primarily with investigating illegal activity." He contends that the officers, after ordering him to exit his vehicle, "ceased investigating a traffic violation and . . . turned their attention to investigating whether he possessed drugs or guns."

As appellant's argument correctly recognizes, the Fourth Amendment requires that an investigative seizure — such as the traffic stop that set off the chain of events in this case[12] — "last no longer than is necessary to effectuate the

---

[12] "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a

(continued…)

purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Further, "[t]he scope of the detention must be carefully tailored to its underlying justification." *Id.* To assess whether a detention is "too long in duration to be justified as an investigative stop," it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly[.]" *United States v. Sharpe*, 470 U.S. 675, 686 (1985). "A seizure that is justified solely by the interest in issuing a . . . ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "In the context of traffic stops, police diligence [generally] involves requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket." *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011). At the same time, it is settled that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see, e.g.*, *Caballes*, 543 U.S. at 410 ("A dog sniff [of a vehicle] conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that

---

(…continued)
'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996).

no individual has any right to possess does not violate the Fourth Amendment.").

This means that some brief extension of the duration of a lawful traffic stop does not convert the stop into an unlawful seizure.

We reject appellant's argument that his detention was unlawfully protracted. The credited evidence was that, at the time the officers asked appellant for consent to search his vehicle (immediately after escorting him to the back of the car and, according to appellant's brief, "contemporaneously" with the pat-down), although they had already performed a computer check of the tags of the vehicle, they had not yet obtained from appellant the license, registration, and insurance documents they had requested (and thus had not accomplished their investigative purpose), and they had not yet issued him a ticket. What appears to have been the very short time it took for the officers to perform the pat-down, to ask appellant one time about whether he had guns or drugs in his vehicle, and to request appellant's consent to search and to obtain his "go ahead' response,[13] cannot be said to have

---

[13] Defense counsel did not argue at the conclusion of the suppression hearing that the officers' actions prolonged the traffic stop, and the trial court made no findings about the duration of any portion or portions of the stop. Appellant testified that the search of his vehicle took "about five minutes[,]" but by the time of the search, Officer O'Bannon had a new basis for investigation: the sighting of the vial of amber-colored liquid. *Cf. State v. Day*, 87 S.W.3d 51, 54 (Mo. Ct. App. 2002) ("If the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character *unless a new factual*

(continued…)

unreasonably prolonged the traffic stop.[14] Moreover, Officer O'Bannon testified at trial that he began his flashlight inspection of appellant's vehicle on the rear passenger side of the vehicle near where the officers and appellant were standing, which is where he saw the vial of amber liquid in plain view, so it appears that very little additional time passed before the officer saw the contraband and had "a new factual predicate" for detaining appellant. *Day*, 87 S.W.2d at 54, *supra* note 13. Further, according to the credited testimony, although Officer O'Bannon turned his attention to appellant's vehicle, he did not "abandon[] the[] investigation of the traffic stop" as appellant argues, but issued appellant a ticket on the scene and placed it in his vehicle after he was arrested.[15]

---

(…continued)
*predicate for reasonable suspicion is found during the period of lawful seizure.*") (italics added and internal quotation marks omitted).

[14] Because appellant's detention was not prolonged by those actions and questions, "there was no additional seizure within the meaning of the Fourth Amendment." *Muehler v. Mena*, 544 U.S. 93, 101 (2005).

[15] This case is quite unlike *United States v. Digiovanni*, 650 F.3d 498 (4th Cir. 2011), a case on which appellant relies, in which the officer who pulled Digiovanni over for a traffic offense embarked on questioning him about his travel history and travel plans and then repeatedly asked him whether he had illegal drugs in the car after his initial denial, mentioned bringing in a drug detection canine, did not begin the process of checking Digiovanni's driver's license until more than ten minutes after he was stopped, and, after finally issuing a warning ticket — thereby concluding the initial purpose of the stop — obtained Digiovanni's written consent to a search of his car. *Id.* at 502–04, 510. The Fourth Circuit concluded that the officer "failed to diligently pursue the purposes of [a traffic] stop and embarked on

(continued…)

The very brief extension of the duration of the traffic stop during the time it took the officers to perform the pat-down at the rear of appellant's vehicle, to ask appellant for consent to search, and to begin the flashlight-inspection starting at the rear passenger-side window, also leads us to reject appellant's argument that, when Officer O'Bannon shined his flashlight into the vehicle's window, he was not "lawfully in a position to [see inside the vehicle and to] observe the object" in plain view. *Crawford v. United States*, 369 A.2d 595, 601 (D.C. 1977). Even without appellant's valid consent to a search of his vehicle, the officer was entitled to look into the vehicle while it remained lawfully stopped, to spot any contraband that might be in plain view.[16] *See Jones v. United States*, 299 A.2d 538, 539 (D.C.

---

(…continued)
a sustained course of investigation into the presence of drugs in the car that constituted the bulk of the encounter between [the officer and the appellant]." *Id.* at 509.

[16] Contrary to appellant's assertion that Officer O'Bannon was "engaged in an illegal search of the vehicle at the time he spotted the vial," Officer O'Bannon's using his flashlight to look into appellant's vehicle through the window did not constitute a search for purposes of the Fourth Amendment. *See Texas v. Brown*, 460 U.S. 730, 740 (1983) (noting that "the use of artificial means to illuminate a darkened area simply does not constitute a search"; reasoning that the facts that the police officer "changed his position and bent down at an angle so [he] could see what was inside Brown's car" was "irrelevant to Fourth Amendment analysis[,]" since the "general public could peer into the interior of Brown's automobile from any number of angles" and "there is no reason [why the officer] should be

(continued…)

1973) ("[F]rom his position next to the vehicle, the officer may look inside and take notice of any objects in plain view."). This is not a case in which "the police were in a position to view the contraband in [the defendant's] car only because of [an] illegal seizure[,]" *see Hicks*, 705 A.2d at 640; rather, the vial was "in the officers' plain view after police had legitimately stopped the vehicle" for running a stop sign, *see Childress v. United States*, 381 A.2d 614, 618 (D.C. 1977). We also are not persuaded that there was any other "but for" or causal connection between the unlawful pat-down and Officer O'Bannon's initiation of his flashlight inspection of appellant's lawfully stopped vehicle.

Because we conclude that Officer O'Bannon's flashlight inspection of appellant's vehicle was not the fruit of an unlawfully prolonged traffic stop, we now go on to address appellant's final argument as to why his motion to suppress should have been granted: that Officer O'Bannon lacked probable cause to search the vehicle by opening the car door, sticking his head inside, and retrieving and smelling what was in the vial. Appellant contends first that there was no probable cause for the search because the incriminating character of the vial was not

---

(…continued)
precluded from observing . . . what would be entirely visible to him as a private citizen (alterations and internal quotation marks omitted)).

"immediately apparent" to Officer O'Bannon. Appellant asserts that the officer never testified that he had "experience in recognizing *containers* of PCP, only . . . in smelling PCP." That argument is unavailing, because although Officer O'Bannon, a veteran of the MPD Major Narcotics Unit, did not explicitly describe his experience with containers of PCP, he testified that the smell of PCP is "kind of unbearable *once you break the seal . . . of a vial*" (emphasis added). This was testimony from which the trial court could (and we can) reasonably infer that the officer did have previous experience with vials containing PCP and recognized the vial he saw on the vehicle floor as a typical container of PCP. Appellant is correct that Officer O'Bannon did not testify that when he saw the vial he recognized it as a vial typically containing PCP, but — especially viewing his testimony "in the light most favorable to sustaining the ruling below[,]" *Joseph v. United States*, 926 A.2d 1156, 1160 (D.C. 2007) — we think that is the clear implication of his testimony.

Appellant next argues that Officer O'Bannon lacked probable cause because "for all [he] knew at the time he spotted the vial, it contained perfume." However, "probable cause does not demand the certainty we associate with formal trials[,]" *Illinois v. Gates*, 462 U.S. 213, 246 (1983), and the plain-view doctrine does not require an "unduly high degree of certainty as to the incriminatory character of

evidence," *Texas v. Brown*, 460 U.S. 730, 741 (1983) (plurality opinion). In the plain-view context, as in others,

> [Probable cause] merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.

*Id.* at 742 (citations and internal quotation marks omitted). "[A]ll that is required for probable cause" is a "fair probability . . . that drugs or evidence of a drug crime . . . will be found." *Florida v. Harris*, 133 S. Ct. 1050, 1056 n.2 (2013).

Contrary to appellant's contention, the fact that Officer O'Bannon waited until after he opened the vehicle door and discerned the smell of PCP emanating from the vial before he gave the signal to the other officers to handcuff and arrest appellant does not mean that he lacked probable cause to believe that the vial contained PCP upon seeing the vial and its amber-colored content from outside the vehicle. *Cf. United States v. Buchanan*, 70 F.3d 826 n.5 (5th Cir. 1996) ("[T]he fact that the officers chose to field test the substance does not indicate that they lacked probable cause to believe the residue was contraband. Testing for certainty's sake will not, by itself, undermine an otherwise valid probable cause

determination."); *United States v. Prandy-Binett*, 995 F.2d 1069, 1073 (D.C. Cir. 1993) ("If [the defendant's] bag held clear ziplock bags containing white powder, the detectives . . . would not have been sure whether he possessed cocaine or heroin (or [instead] some innocuous substance). Yet that cannot be a reason for finding no probable cause."); *see also Hoffa v. United States*, 385 U.S. 293, 310 (1966) ("The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and . . . are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.").

We conclude that the facts available to Officer O'Bannon warranted a belief by a reasonably prudent officer that the vial contained PCP. The relevant "totality of the circumstances"[17] also included Officer O'Bannon's observation that appellant was "sweating and shaking profusely" and breathing heavily as the officer approached his vehicle. Objectively, that observation, in conjunction with Officer O'Bannon's observation of the vial, gave the officer probable cause to

---

[17] Whether an officer had probable cause is measured by the totality of the circumstances." *Beachum v. United States*, 19 A.3d 311, 319 n.10 (D.C. 2011).

search the vehicle without a warrant. *See United States v. Mayo*, 627 F.3d 709, 713–14 (8th Cir. 2010) (upholding magistrate's determination that driver's heavy breathing, sweating, and shaking hands, and plain-view sighting of an item consistent with drug packing were among factors that gave trooper probable cause to believe that contraband would be found in his vehicle); *United States v. Scott*, 987 A.2d 1180, 1191 (D.C. 2010) ("'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 (1996)).[18]

---

[18] *Cf. v. United States*, 788 A.2d 155, 158, 160 n.3 (D.C. 2002) (reasoning, in a case where officer spotted a "blue ziplock bag containing a green weed substance protruding from [defendant's] shoe," that the officer's recognition of "the distinctive packaging of the item containing the weed substance as used in the drug trade to hold marijuana" was "sufficient to support a finding of probable cause"); *In re J.D.R.*, 637 A.2d 849 (D.C. 1994) (concluding, based on an officer's personal experience that ziplock bags were commonly used as drug containers, that the officer had probable cause to believe that J.D.R. was concealing an illicit drug inside his cast where the officer saw the corner of a small ziplock bag sticking out from inside the cast and observed J.D.R. curl up his fingers so that the bag could not be seen when the officer shined his flashlight on the cast); *Price v. United States*, 429 A.2d 514, 517–19 (D.C. 1981) (concluding that there was probable cause based on officer's sighting of a small manila envelope which he recognized as a commonly used container for illicit drugs and defendant's furtive gesture as officers approached his vehicle, and noting the officer's testimony that "he had been involved in hundreds of drug related arrests and in perhaps 20% of those arrests these small manila envelopes were involved" and that "'[m]ost every time I had a narcotic arrest involving one of those envelopes, it would be the carrier of the narcotics that I was seizing'").

Highlighting Detective Thomas's testimony about PCP's strong smell,[19] appellant argues that the vial of amber liquid did not provide probable cause to believe that the vial contained PCP because, when appellant's window was open at the initiation of the traffic stop and "[w]hen the door of the car was opened for him to exit, none of the three officers saw or smelled anything illegal in his car." We note, however, that reported cases contain many references to law enforcement officers not detecting the odor from a vial of PCP until picking up or opening the vial,[20] so we cannot say that in this case, the officers' not having smelled the odor of PCP from outside the car negated probable cause to believe that the clear vial of

---

[19] Detective Thomas testified that the PCP recovered from appellant's vehicle, which was admitted as a trial exhibit and was in the courtroom at the time of his testimony, "is, in fact, contained in two additional containers at this time and a bag as well as a heat-seal envelope. But if, in fact, it was not contained, in all of those and just in the vial, it would be strong enough that everyone in this courtroom could actually — The odor would, in fact, emit through the entire room here."

[20] *See, e.g.*, *People v. Lewis*, No. B217677, 2010 Cal. App. Unpub. LEXIS 1694, at *5 (Cal. Ct. App. Mar. 9, 2010) (recounting that the deputy "did not smell PCP until he picked up the vial"); *United States v. Graham*, 119 F. Supp. 2d 116, 121 (D. Conn. 2000) (recounting that upon recovering a clear-glass bottle of yellow-brown liquid from a vehicle glove box, the detective "opened it and immediately smelled the odor of PCP"); *Dockery*, 618 N.E.2d at 350 (recounting that officers "opened the bottle and determined from the . . . unique odor that it contained liquid PCP").

amber liquid was PCP.  For that and all the foregoing reasons, we hold that the trial court did not err in denying the motion to suppress.

### III.  Admission of the Vehicle Registration

After the testimony of the government's last fact witness, the prosecutor informed the court that he intended to introduce a copy of the registration for the vehicle appellant was driving on the day of his arrest, to establish that the vehicle was registered to him.  Defense counsel objected to admission of the vehicle registration because the government had failed to produce it in response to the defense's pre-trial discovery request for "any and all documents that [the government] intend[ed] to use at trial."  The trial court overruled appellant's objection, explaining that it could not "see unfair prejudice" from admitting a vehicle registration for "a car that [appellant] knows is registered to him."  Faced with the court's ruling, defense counsel agreed to the stipulation that the vehicle was registered to appellant.  Appellant now contends that the trial court abused its discretion in overruling his objection to the admission of his vehicle registration. He contends that "his defense was prepared with the understanding that the government did not intend to present evidence of ownership of the vehicle."

Super. Ct. Crim. R. 16 (a)(1)(C) provides in relevant part that "[u]pon request of the defendant the prosecutor shall permit the defendant to inspect and copy or photograph . . . papers [or] documents . . . which are within the possession, custody or control of the government, and which . . . are intended for use by the government as evidence in chief at the trial[.]" The government contends that it did not violate Rule 16 because it was not until the first day of trial that the government "first obtained" the vehicle registration from the Department of Motor Vehicles ("DMV"),[21] and thus that the document was not in the government's possession at the time of appellant's Rule 16 request. The government also contends that appellant can show no prejudice from admission of his vehicle registration.

Rule 16 (d)(2) provides "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may . . . prohibit the party from introducing evidence not disclosed[.]" *Accord Wiggins v. United States*, 521 A.2d 1146, 1148 (D.C. 1987). The decision whether to impose sanctions is within the discretion of

---

[21] We surmise that the prosecutor sought and obtained the registration after defense counsel asserted in his opening statement that the police found the vial of PCP in a vehicle that appellant "happened to be driving." Prior to that statement, it appears that the ownership of the vehicle was not in dispute: in his testimony at the suppression hearing, appellant acknowledged that he owned the vehicle.

the trial court, which must "consider a number of factors including the reason for nondisclosure, the impact of nondisclosure, and the impact of the proposed sanction on the administration of justice." *Id.* This court "defer[s] to the [trial] judge's choice if it was within the range of permissible alternatives, taking cognizance of the nature of the determination being made and the context within which it was rendered." *Id.* (internal quotation marks omitted). We will reverse a conviction obtained in the wake of a challenged ruling declining to impose a sanction "only if the error substantially prejudiced appellant's rights." *Lee v. United States*, 454 A.2d 770, 776 (D.C. 1982).

The Rule 16 duty of disclosure not only applies to the prosecutor's office, but also extends to other "investigative agencies of the government." *Myers v. United States*, 15 A.3d 688, 690 (D.C. 2011). We held in *Myers*, however, that a video recording in the possession of the Washington Metropolitan Area Transit Authority was not in the possession of the government in part because "there was no . . . showing of involvement by the Metro Transit Police at any time in the investigation or prosecution of [the] case." *Id*. at 692. Assuming without deciding that the DMV is an investigative agency of the government and that the government was required to produce documents in the DMV's possession, we agree with the government that appellant suffered no legally cognizable prejudice

from admission of his vehicle registration, and thus that the court did not abuse its discretion in admitting it and declining to sanction the government. That is not to say that appellant suffered no prejudice; the prosecution's presentation of evidence probative of guilt is always prejudicial from a defendant's point of view. The relevant question is whether the evidence was unfairly prejudicial, and we are satisfied that admission of the vehicle registration was not unfairly prejudicial, since appellant and his trial counsel knew without discovery that the vehicle was registered to appellant and also knew that the government might be able to prove this fact in some way other than through introduction of the vehicle registration. *Cf. Washington v. United States*, 600 A.2d 1079, 1081 (D.C. 1991) (reasoning that Washington's argument that he was prejudiced by the government's failure to disclose a photograph "show[ing] that appellant had a moustache at the time of his arrest" was meritless because "appellant obviously had first-hand knowledge of his appearance at the time of his arrest").

## IV. Sufficiency of the Evidence

Appellant contends that the evidence presented at trial was insufficient to establish that he had constructive possession of the vial of PCP found in his vehicle. To prevail on his claim of evidentiary insufficiency, appellant "bears the

heavy burden of showing that the prosecution offered no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Olafisoye v. United States*, 857 A.2d 1078, 1086 (D.C. 2004) (internal quotation marks omitted). In evaluating the claim, we "view the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Freeman v. United States*, 912 A.2d 1213, 1218 (D.C. 2006) (internal quotation marks omitted).

To prove a defendant's constructive possession of contraband, "the evidence must show that [he] knew of its presence and had both the ability and intent to exercise dominion and control over it." *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007). "The government may establish these elements by either direct or circumstantial evidence." *Taylor v. United States*, 662 A.2d 1368, 1372–73 (D.C. 1995). We have observed that "when the government proves the presence of contraband in an automobile, in plain view, conveniently accessible to [the defendant], the additional evidence necessary to prove constructive possession is comparatively minimal." *Rivas v. United States*, 783 A.2d 125, 137 (D.C. 2001) (en banc).

Here, we have little difficulty concluding that the evidence sufficed to enable any reasonable juror to find beyond a reasonable doubt that appellant constructively possessed the vial of PCP found in his vehicle. The vial was not hidden among other objects where it might have escaped notice, but was found on the uncluttered backseat floorboard of the vehicle, in plain view. The officers detected the smell of PCP emanating from the vial as soon as they stuck their heads inside the vehicle, evidence that permitted the jury reasonably to infer that appellant, too, smelled the PCP while in the vehicle and thus knew of its presence. *Cf. Speight v. United States*, 671 A.2d 442, 455 (D.C. 1996) ("The smell of PCP emanating from the car indicated that it was likely that appellant[] knew the car contained drugs."). Further, the stipulation established that appellant owned the vehicle, and the uncontradicted evidence was that he was the vehicle's sole occupant when he was stopped by the officers. *Cf. Olafisoye*, 857 A.2d at 1087 ("[N]o other passengers were in the car when appellant was arrested, a fact which tends to negate any inference that the marijuana might have belonged to someone else.").[22] "It is usually easy to establish that the owner of a car . . . has constructive possession of illicit items recovered from [the car,]" *Taylor*, 662 A.2d at 1373, and appellant's "close proximity to drugs in plain view is certainly probative in

---

[22] As the prosecutor argued to the jury, the jury could infer that it was unlikely that a third party would have left in appellant's vehicle a vial of PCP that, according to Detective Thomas's testimony, had a street value of $1500 or more.

determining not only whether he knew of the drugs and had the ability to exert control over them, but also whether he had the necessary intent to control . . . their use or destiny," *Rivas*, 783 A.2d at 128. Appellant emphasizes that there was no evidence that, during the traffic stop, he made gestures or movements toward the vial, and no evidence of how long the vial had been on the rear floorboard, how long appellant had been in the vehicle, or whether there had been any other occupants or drivers of the vehicle. That is of little moment because the government "need not disprove every theory of innocence in order to sustain a conviction." *Olafisoye*, 857 A.2d at 1086 (internal quotation marks omitted).

## V.

Appellant asserts, the government concedes, and we agree that appellant's convictions for possession of PCP and possession of liquid PCP were both "based on the same vial of PCP recovered during the search of his vehicle" and may not both stand. Accordingly, we affirm the judgments of conviction but remand for the trial court to vacate one of appellant's convictions.[23]

---

[23] The trial court recognized that the convictions should merge and indicated during the sentencing proceeding that, if both convictions were otherwise affirmed, it would vacate the possession of PCP conviction.

*So ordered.*