**Valerie M. BROWN, Appellant**

v.

**UNITED STATES, Appellee.**

No. 07–CM–1399.

District of Columbia Court of Appeals.

Submitted June 26, 2009.

Decided Nov. 25, 2009.

Jonathan Montcalm, Law Student, and Moses Cook, Supervising Attorney, Law Students in Court, were on the brief for appellant.

Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese, III, Stephen R. Prest, and Erin L. Walsh, Assistant United States Attorneys, were on the brief for appellee.

Before KERN, TERRY, and SCHWELB, Senior Judges.

TERRY, Senior Judge:

Appellant was charged by information with possession of cocaine, in violation of D.C.Code § 48–904.01(d) (2001). She filed a motion to suppress tangible evidence and statements. The trial court held a combined hearing on appellant's motion and non-jury trial, and at its conclusion the court denied the motion and found her guilty as charged. Appellant's only contention on appeal is that the court erred in denying her motion to suppress. We find no error, and accordingly we affirm the conviction.

I

The government's evidence established that on August 30, 2007, Metropolitan Police Officers Sarah Hoffman and David

Wildey were on routine patrol in the 1600 block of North Capitol Street when they saw five or six persons standing on the sidewalk. The officers, wearing vests with the word "Police" written across the front, and with their guns holstered, walked up to the group. Officer Hoffman approached "the female" (appellant) while Officer Wildey spoke with "two males." The other members of the group walked away.

Officer Hoffman stopped approximately two or three feet behind appellant and, speaking in a normal tone, without placing her hand on her gun and without making any threatening gesture, asked, "Do you have any guns, drugs, or narcotics on you?" Appellant turned around and said, "I'm not doing anything. I'm counting my money." When Officer Hoffman repeated her question, appellant reached into her purse and handed the officer a brown pill bottle. Officer Hoffman opened the bottle, and inside it she found three small ziplock bags. The substance in the bags field-tested positive for cocaine.[1]

Appellant did not testify or present any evidence. The court found that there was "no Fourth Amendment violation here [in] any respect."

## II

■ Appellant contends that she was illegally seized by the officers and that the officer's examination of the pill bottle was an illegal search. In reviewing the denial of a motion to suppress, we defer to the trial court's findings of evidentiary fact, but the court's legal conclusions are subject to *de novo* review. *See Joseph v. United States*, 926 A.2d 1156, 1160 (D.C. 2007). We consider both of appellant's arguments and find no error.

■ A Fourth Amendment seizure occurs when an individual's liberty is restrained by physical force or a show of authority. *E.g., Kelly v. United States*, 580 A.2d 1282, 1285 (D.C.1990) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The focus of the "seizure" inquiry is whether, under all the circumstances, "a reasonable person would have believed that [she] was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "Factors which 'might indicate a seizure' would include, for example, 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Kelly*, 580 A.2d at 1286 (citing *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870).

■ The trial court did not err in concluding that no seizure occurred in this case. Officer Hoffman stood two or three feet away from appellant, and Officer Wildey was farther away and did not interact with appellant in any way. *See Kelly*, 580 A.2d at 1286 (second officer, who stood four feet away from defendant and did not interact with him, was not a "threatening presence"). Although the officers were wearing police clothing, they did not make any motions toward their holstered guns, touch appellant, give any orders, or otherwise act threatening or make any "show of authority" which might have suggested that appellant was not free to leave. *See Ware v. United States*, 672 A.2d 557, 561 n. 8 (D.C.1996) (officer's approach in uniform and on a police motorcycle, by itself, does

---

1. The parties stipulated to the results of the later laboratory analysis which showed that the substance was in fact cocaine.

not constitute a seizure). None of the factors which "might indicate a seizure" listed in *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870, are present in this case. In addition, other members of appellant's group walked away unimpeded, a fact that further indicates the encounter was not a seizure. *See California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (no seizure unless suspect yields to show of authority). Officer Hoffman asked appellant a question in a "normal tone" of voice and repeated her question only after appellant gave a non-responsive answer. *See Casey v. United States,* 788 A.2d 155, 159 (D.C.2002) (police questioning alone does not constitute a seizure); *accord, Ware,* 672 A.2d at 561 & n. 6 (citing cases). Because we are satisfied that a reasonable person would have felt free to leave under these circumstances,[2] we hold that appellant was not seized. *See Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870.

In support of her argument, appellant cites cases in which this court held that there was a seizure based on a show of authority. In particular, she relies heavily upon *Hawkins v. United States,* 663 A.2d 1221 (D.C.1995), in which we held that a Fourth Amendment violation occurred when two police officers approached the defendant's double-parked car, directed him to park the car properly and turn off the engine, and then stood on either side of the car and asked him three times whether he was "packing."[3] We noted that the officers "adopted a posture displaying their authority" and that the repeated questioning "further negated" any objective belief that the defendant was free to leave. *Id.* at 1225–1226. In a

footnote, we explained that repeated questioning of a defendant can cause an encounter to lose "its consensual nature" if the police officers' questions or actions "convey a message that compliance with their requests is required." *Id.* at 1226 n. 20 (citing *Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). In "the context of the officers' overall conduct restraining appellant's apparent freedom to leave," such repeated questioning "certainly appear[ed] to convey" that compliance with the question was required. *Id.*

Such coercive circumstances were not present in this case. Although Officer Hoffman asked the question twice, there is no indication that she or her fellow officer "adopted a posture displaying their authority" or engaged in any other behavior, such as threatening gestures, orders, or intimidation, which might have caused the encounter to lose its consensual nature. The uncontroverted evidence shows that a reasonable person, in the totality of the circumstances, would have felt free to leave.

## III

 We also conclude that the trial court did not err in rejecting appellant's argument that Officer Hoffman illegally searched the pill bottle after appellant handed it to her. A search conducted with consent is permissible, and evidence obtained pursuant to a consent search may be admitted under a well-recognized exception to the Fourth Amendment exclusionary rule. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36

---

**2.** The trial court did not rule explicitly on whether appellant was free to leave, but we think such a finding was implicit in the court's ruling that there was "no Fourth Amendment violation here [in] any respect."

**3.** The defendant answered in the negative each time.

L.Ed.2d 854 (1973). A search is consensual when "the consent [is] in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248, 93 S.Ct. 2041. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (cited in *Ware,* 672 A.2d at 565).

The uncontroverted evidence shows that appellant voluntarily consented to the officer's search of the pill bottle. Although she did not give explicit, verbal permission, she nonetheless impliedly consented to the search by handing the bottle to Officer Hoffman in response to a question about whether she had any "guns, drugs, or narcotics." Appellant had not been seized, and there is nothing in the record to suggest that she was in any way coerced or unable to give a valid consent. Under these circumstances, the trial court could reasonably conclude that appellant voluntarily consented to the search of the inside of the pill bottle when she handed the bottle to the officer in response to a question about whether she possessed any contraband. *See Ware,* 672 A.2d at 566 (holding that the defendant's consent to examine a toothbrush holder extended to the interior as well as the exterior of that container).

## IV

We agree with the trial court that there was "no Fourth Amendment violation" and hold accordingly that the court properly denied appellant's motion to suppress. The judgment of conviction is

*Affirmed.*

SCHWELB, Senior Judge, concurring in the judgment but dissenting in part:

In my opinion, the notion that a reasonable person in Valerie Brown's position "would have felt free to leave,"[1] when the police had asked her twice whether she had a gun or narcotics on her, is unrealistic and contrary to common sense. "[C]ommentators have suggested that a reasonable person who would feel free to walk away [from the police] is a legal fiction." *In re J.M.,* 619 A.2d 497, 513 n. 19 (D.C.1992) (en banc) (Mack, J., concurring in the remand and dissenting in part) (citations omitted).

> We recognized two decades ago that
>
> as Professor LaFave has explained, if the concept of "freedom to walk away" is taken to mean that a pedestrian whose movements have been interrupted and who is questioned is likely to feel free to depart without responding, it is a highly questionable conclusion. As noted *Illinois Migrant Council v. Pilliod* [398 F.Supp. 882 (N.D.Ill.1975), *aff'd,* 540 F.2d 1062 (7th Cir.1976) ]: "[i]mplicit in the introduction of the [officer] and the initial questioning is a show of authority to which the average person encountered will feel obliged to stop and respond. Few will feel that they can walk away or refuse to answer."

*Lawrence v. United States,* 566 A.2d 57, 61 (D.C.1989) (quoting W. LaFave, Search and Seizure § 9.2(h), at 410–11 (1987 & Supp. 1989) (hereinafter LaFave)). As further noted in *Lawrence,*

---

1. As the majority acknowledges, the trial judge never made an explicit finding to the effect that a reasonable person in Ms. Brown's situation would have felt free to leave. The majority surmises that the judge must have implicitly so found, for she concluded that there was no Fourth Amendment violation. I suppose that this is a plausible explanation of the judge's omission of what would have been a critical finding.

the [Supreme] Court has concluded that reasonable persons would feel free to leave under circumstances in which many of us would discern the existence of considerable pressure not to do so. *See, e.g., [United States v.] Mendenhall,* [446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) ].

*Id.* at 60.

It is worth emphasizing that, in some kinds of controversies implicating the liberty of the citizen, courts have been more insistent than in the Fourth Amendment context that a citizen's postulated freedom of action must be real, rather than merely theoretical:

> In other areas of the law, the concept of freedom of choice is an expansive one. In racial discrimination cases, for example, courts have long held that freedom of choice can exist only if the choice is free in the practical context of its exercise. *Coppedge v. Franklin County Bd. of Educ.,* 273 F.Supp. 289, 299 (E.D.N.C. 1967), *aff'd,* 394 F.2d 410 (4th Cir.1968). "If choice influencing factors are not eliminated, freedom of choice is a fantasy." *Lee v. Macon County Bd. of Educ.,* 267 F.Supp. 458, 479 (M.D.Ala.1967) (three judge court), *aff'd sub nom. Wallace v. United States,* 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967). If these principles were transposed to Fourth Amendment jurisprudence, suppression would surely be called for in a

host of cases, including the present one. An officer's request to Lawrence to stop and open his hand, under the circumstances of this case, must reasonably be deemed, at least, a significant "choice influencing factor." As one empirical study has concluded,

> in high-crime areas, particularly, persons who stop and answer police questions do so for a variety of reasons, including a willingness to cooperate with police, a fear of police, a belief that a refusal to cooperate will result in arrest, or a combination of all three.

L. TIFFANY, D. McINTYRE & D. TOTENBERG, DETECTION OF CRIME 17 (1967), *quoted in* 3 W. LaFAVE, SEARCH AND SEIZURE § 9.2(h) at 408 (1987 and Supp. 1989).

*Lawrence,* 566 A.2d at 60–61.

In this case, any reasonable person in Ms. Brown's position would have believed that if she had continued to decline to respond to the policewoman's questions, and if she had tried to walk away, the police would have become even more suspicious of her, and that it would not have been in her interest to argue with, defy, or make an enemy of the police. To suppose that Ms. Brown then handed over to Officer Hoffman a pill bottle containing cocaine "voluntarily" is either to believe in the tooth fairy or to redefine "voluntary" to include "out of fear." The law should not pretend that something is so when it is not so.[2]

---

**2.** I think it worth adding that my quarrel here is not with the *result* of the case, but with what I regard as its fallacious predicate, namely, that a reasonable person in Ms. Brown's position would feel free to leave when common sense tells us that she or he would surely be apprehensive as to what would occur if she failed to cooperate with the police or comply with their requests or demands. If the doctrine animating this case and others before it were based on a more forthright rationale—*e.g.,* that the situation is, in some measure, coercive, but that this level

of coercion is not "unreasonable" within the meaning of the Fourth Amendment—then the police could go about what is often important business solving crimes without the courts more or less pretending that something is true when it is not.

This approach is similar to that of Professor LaFave, who would permit police officers to seek cooperation, even where this may involve inconvenience or embarrassment for the citizen, and even though many citizens will defer to this authority of the police

Be that as it may, however, we are required to follow Supreme Court precedent, *see, e.g., Mendenhall,* 446 U.S. at 554–55, 100 S.Ct. 1870, as well as our own, including *Lawrence;*[3] *see also Kelly v. United States,* 580 A.2d 1282, 1285 (D.C. 1990). I cannot reasonably argue that the present case is meaningfully distinguishable from these and other authorities cited in the opinion of the court. Thus, although I do not agree with, and therefore dissent from, the statement in the majority opinion that "we are satisfied that a reasonable person [in Ms. Brown's position] would have felt free to leave under these circumstances," I concur in the judgment of affirmance.

---

because they believe—in some vague way—that they should.

*Lawrence,* 566 A.2d at 61 (quoting 3 LaFave § 9.2(h) at 44). According to LaFave, "moral and instinctive pressures to cooperate are generally sound, and the police may quite properly rely on them." *Id.* (Internal quotation marks omitted).

3. In *Lawrence,* in which the opinion of the court was written by the author of this opinion, we affirmed Lawrence's conviction on facts no more indicative than is the present record of true voluntariness or freedom to leave. One judge dissented, concluding that the seized contraband should have been suppressed. *Id.* at 64.