*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CF-0605

DOMINIQUE HAWKINS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CF2-10603-18)

(Hon. Kimberley S. Knowles, Trial Judge)

(Argued January 12, 2021                    Decided April 8, 2021)

*Christine Pembroke* for appellant.

*Elizabeth Gabriel*, Assistant United States Attorney, with whom *Timothy J. Shea*, United States Attorney at the time the brief was filed, *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Tara Ravindra*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and DEAHL, *Associate Judges*, and FISHER, *Senior Judge*.

FISHER, *Senior Judge*: Appellant Dominique Hawkins challenges the denial of his motion to suppress evidence. He argues that the trial court erred by finding that he consented to a police officer's warrantless search of his small satchel, in

which police found a firearm. We agree that the record does not show that Mr. Hawkins consented to the search and therefore reverse.

## I. Background

### A. The Indictment

On August 8, 2018, Mr. Hawkins was charged with carrying a pistol without a license; possession of an unregistered firearm; unlawful possession of ammunition; and possession of cocaine, in violation of D.C. Code §§ 22-4504(a) (2020 Supp.); 7-2502.01(a) and 7-2506.01(3) (2018 Repl.); and 48-904.01(d) (2020 Supp.), respectively. Mr. Hawkins filed a motion to suppress all tangible evidence and statements, arguing that the police "unlawfully stopped, seized, and detained" him while he was standing on a driveway. The motion was denied, and Mr. Hawkins entered a conditional plea of guilty to the indictment, preserving his right to pursue this appeal.

### B. The Suppression Hearing

Judge Kimberley Knowles presided over a hearing on the motion to suppress, receiving evidence on February 22, and March 22, 2019. The arresting officer, Christopher Denton, was the only witness to testify.

On July 16, 2018, Officer Denton and seven other officers – all members of MPD's specialized Gun Recovery Unit – were assigned to patrol MPD's Fifth District. Denton testified that the group, which was traveling in two unmarked police cars, went to the 2600 block of Evarts Street because the area had experienced "an increase in violent crime" that summer. Denton said that as they turned onto Evarts Street, he saw Mr. Hawkins and another man sitting in chairs at the end of a driveway. Denton explained, "I looked towards the defendant and I observed the defendant look towards me."

According to Denton, Mr. Hawkins "immediately reach[ed]" into a small satchel hanging around his neck and "stuffed his hands into the bag several times." Denton explained that Mr. Hawkins' movement appeared "involuntary," "like patting for your keys that you may have lost when someone mentions keys." Denton said that after Hawkins reached into his satchel, Hawkins then "grabbed his chair and looked right to left quickly and kind of half got out of the chair." These actions made Denton suspect that Hawkins was concealing contraband in the satchel. Denton said he was particularly concerned that Hawkins might have a gun because Denton's unit had "recovered many firearms" from satchels that summer.

Denton and at least two other officers exited their vehicles and approached Hawkins and his companion. Denton testified that as he approached Hawkins, he said something similar to "hey, man. Officer Denton. Everything good? We just want to make sure everything is cool and nobody has any illegal firearms." As Denton walked toward Hawkins, Hawkins stood up, raised his hands, and started walking toward them. As Hawkins walked, he moved his hand toward his satchel as if to touch or adjust it. Denton explained at the suppression hearing that he found the hand movement toward the satchel significant because it showed Hawkins' "consistent awareness of an item that causes . . . nervousness." In Denton's experience, "it generally leads to a firearm recovery in persons that exhibit those characteristics[.]"

The government played footage from Denton's body worn camera ("BWC"), which corroborated Denton's testimony up to that point. In the footage, Denton can be heard asking Hawkins, "you mind if, you mind if I just squeeze that man?" Under cross-examination, Denton admitted that, in the video, his hands were moving toward the satchel as he asked for consent to squeeze it. Denton agreed that Hawkins did not verbally respond to his request to search the bag, but he said that Hawkins had nodded his head in consent.

During cross-examination, defense counsel challenged Denton's testimony that Hawkins had nodded his head. Denton admitted that it was difficult to see the nod, pointing out that the video footage was recorded from chest level instead of the eye level that he experienced that day; therefore, not all of Hawkins' head was visible. However, under questioning from defense counsel, Denton agreed that if Hawkins nodded, it was with his entire head, "[c]hin to the tip," and that at least half of Hawkins' head was always visible on the video footage. Denton maintained that he could see Hawkins nod on the video, and that he would point it out for the court if the footage was replayed for him. When defense counsel replayed the footage, Denton was unable to point to any specific place in the video where Hawkins nodded his head signifying consent to the search.

The video footage showed Denton's hands quickly moving toward Hawkins' satchel at the same time Denton is heard requesting permission to squeeze it. Denton testified that when he touched Hawkins' satchel, he "immediately felt . . . the handle of a firearm." This squeezing of Hawkins' bag is the central issue in this case. At oral argument, the government conceded that if Denton's initial squeezing of Hawkins' bag was an unreasonable search, that constitutional violation tainted any later consent by Hawkins.

Denton did not tell Hawkins he could feel a gun, but instead asked if Hawkins would mind opening the bag. The video shows that Hawkins opened a side zipper, and that Denton then asked if he could see "what's in the bigger pocket?" While holding the zipper of the larger pocket, Denton asked Hawkins, "do you mind if I just open this zipper? Do you mind? Or do you want to do it for me?" Hawkins said he would open it. Denton testified that after he peered inside the satchel, he saw the handle of a gun and the officers arrested Hawkins for illegal possession of a firearm. Officers recovered 3.8 grams of cocaine from Hawkins after arresting him.

On April 11, 2019, Judge Knowles orally denied the motion to suppress. Judge Knowles said that even though there were "a couple of inconsistencies" in Officer Denton's testimony (relating to whether Denton had seen Hawkins stuff one or both hands into his satchel), she largely credited the testimony because in other ways, he was "precise" and "straightforward." Judge Knowles also stated that she relied on the video evidence in addition to Denton's testimony. She found that when Denton requested to search the bag, Hawkins consented by "kind of push[ing] either his chest or his stomach out, which kind of moves the bag a little bit forward. So he kind of moves his upper half forward . . . ."

Judge Knowles noted that "clearly the key issue in this case is consent[,]" because even if the officers had reasonable articulable suspicion to investigate Hawkins' suspicious movements, those factors "did not rise to the level of a pat-down, for the officer to say that he was armed and dangerous[.]" Therefore, consent was the only valid basis for searching Hawkins' satchel.

## II.    Discussion

Hawkins argues that the trial court erred in denying his motion to suppress for three reasons. First, he claims he never consented to Denton's request to search his satchel. Second, Hawkins contends that, even if he consented to the search, that consent was not voluntary because he had been "seized" within the meaning of the Fourth Amendment when Denton and the other officers first approached him. Finally, Hawkins asserts that the officers had no reasonable suspicion of criminal activity when they stopped to question him. We agree that the government did not prove that Hawkins consented to Denton's search and therefore reverse.

### A. Consent

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search is "'per se unreasonable' under the Fourth Amendment unless it falls within a few specific and well-established exceptions." *Basnueva v. United States*, 874 A.2d 363, 369 (D.C. 2005) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Burton v. United States*, 657 A.2d 741, 745 (D.C. 1994)). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth*, 412 U.S. at 219. To benefit from this exception, the government must prove by a preponderance of the evidence that the individual consented to the search. *Basnueva*, 874 A.2d at 369.

Consent may be implied, but this requires an affirmative act by the individual about to be searched. *See United States v. Drayton*, 536 U.S. 194, 206-07 (2002) (holding that appellant consented to a search of his person by lifting his hands about eight inches from his legs in response to officer's question, "[m]ind if I check you?"); *Terrell v. United States*, 361 A.2d 207, 210 (D.C. 1976) (holding that appellant consented to a search by opening the door to a police officer and then stepping back to let him in after being told of his investigation); *Brown v. United States*, 983 A.2d 1023, 1026-27 (D.C. 2009) (holding that appellant consented to a search by handing

a pill bottle to police in response to a question about "whether she had any 'guns, drugs, or narcotics'").

In this case the determination of whether Hawkins consented to a search is "essentially factual," and we therefore will uphold the trial court's finding unless it is clearly erroneous. *Kelly v. United States*, 580 A.2d 1282, 1288 (D.C. 1990) (quoting *Childress v. United States*, 381 A.2d 614, 618 (D.C. 1977) (citations omitted)).

On this record, we hold that the government failed to prove that Hawkins consented to the search of his satchel. First, as Judge Knowles noted, there was no evidence of verbal consent. Nor did Judge Knowles base her finding of consent on any of the reasons given by the government's witness – a lifting of the hands[1] or a nodding of the head.[2]

---

[1] Denton testified that one of the ways that Hawkins had consented to his search was by "voluntarily lift[ing] his hands up" after Denton asked to squeeze the satchel. But under cross-examination, Denton admitted that Hawkins had actually raised his hands – and kept them raised – well before Denton made his request. Judge Knowles pointed out that, although Hawkins' "hands were still in the air – they were up before the question[.]"

[2] As discussed above, Officer Denton could not point to a nodding of the head on the BWC footage. Judge Knowles found that Hawkins "didn't shake his head."

The reason Judge Knowles gave for finding that Hawkins consented to Denton's request was that Hawkins "kind of moved forward a little bit, kind of moving the bag closer." "At that point," Judge Knowles reasoned, "Officer Denton had every reason to believe that there was consent . . . to search the bag." Judge Knowles made this finding based on her review of the BWC footage, independent of any testimony or argument at the suppression hearing.

We respectfully conclude that the record does not support Judge Knowles' conclusion. In the BWC footage, Hawkins walks toward Denton with his hands raised while Denton asks, "you mind if, you mind if I just squeeze that man?" At the same time as he makes this request, Denton's hands can be seen moving toward Hawkins' satchel. In fact, the timestamp shows that Denton finishes articulating "man" in the same second that his hands start squeezing the satchel. While there are no per se rules for how much time an individual must have to consider whether to consent to a search, surely *some* opportunity to grant or deny consent is necessary. Evaluated under the "totality of the surrounding circumstances," *Kelly*, 580 A.2d at 1288, it does not appear that Hawkins even had the opportunity to refuse consent.

Even setting aside the abruptness of the search, we simply do not see Hawkins make any affirmative movement on the BWC footage to indicate his consent to the

search. The video shows Hawkins and Denton walking toward each other, Hawkins' hands raised and Denton explaining that the officers are looking for illegal firearms. Denton begins requesting consent to search the satchel as they finish closing the distance between them and Hawkins stops walking immediately before Denton finishes his question and squeezes the satchel. Hawkins does not "move forward" or "move the bag closer" after Denton finishes his request. There is no other evidence supporting the court's finding. Denton did not testify, and the government did not argue, that Hawkins moved the bag closer in response to Denton's request.

The more difficult question is whether we can fairly say that the trial court's finding of consent is clearly erroneous. This standard of review applies even though we are able to watch the same video footage that Judge Knowles studied. "[W]e do not become finders of fact, nor does the availability of such footage change our standard of review." *Collins v. United States*, 73 A.3d 974, 981 n.4 (D.C. 2013); *see also Dorsey v. United States*, 60 A.3d 1171, 1205-06 (D.C. 2013) (en banc) (applying clearly erroneous standard to trial judge's finding of defendant's motivation for confessing, although there was "substantial evidence to the contrary" and we had a videotape of the confession); *Bost v. United States*, 178 A.3d 1156, 1197 (D.C. 2018) (applying clearly erroneous standard to trial court's finding, made

after reviewing videotape, that "Best appeared to give a 'tiny' nod in response to his mother's question about whether he had hurt anyone").

Nevertheless, although "[t]he 'clearly erroneous' standard of review is highly constraining," *Dorsey*, 60 A.3d at 1205, it does not relieve us of our obligation to conscientiously review the trial court's finding based on the record presented. We note in particular that Judge Knowles was not weighing evidence on this matter from multiple sources, nor was she assessing the credibility of one or more witnesses. We need not go so far as to say that the videotape "blatantly contradicts" the finding of consent, *see generally Scott v. Harris*, 550 U.S. 372, 380 (2007), but we have not seen videotape evidence to support it. Applying the "clearly erroneous" standard, we are "on the entire evidence . . . left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (defining "clearly erroneous" standard) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 394-95 (1948)); *cf. Oliver v. United States*, 618 A.2d 705, 710 (D.C. 1993) (reversing as clearly erroneous trial court finding that defendant had voluntarily consented to pat–down).

It was the government's burden to prove, by a preponderance of the evidence, that Hawkins affirmatively consented to Denton's search. Because neither the BWC

footage nor the witness's credited testimony supports a finding that Hawkins consented to the warrantless search – by raising his hands, nodding his head, or moving his bag forward – the government failed to meet its burden. We, therefore, hold that the warrantless search was unlawful absent another applicable exception to the warrant requirement.[3]

## B. Grounds to Frisk?

"[I]t is constitutionally permissible for police officers to conduct a pat–down search if they have reasonable articulable suspicion that the person they have detained is armed and dangerous." *Germany v. United States*, 984 A.2d 1217, 1222 (D.C. 2009). The government argues that even if Hawkins did not consent, the officers had a reasonable articulable basis to "frisk" his satchel. Judge Knowles disagreed, finding that the officers did not have sufficient reason to believe that Hawkins was "armed and dangerous."

---

[3] In his brief, Hawkins also argues that the search was illegal because he was "seized" within the meaning of the Fourth Amendment when Denton and the other officers approached him, and any consent he gave thereafter was tainted. Because we agree that Hawkins did not consent to the warrantless search of his satchel, we need not address this additional claim.

We agree with Judge Knowles. The officers did not see any crime in progress. Although Hawkins' nervousness upon seeing the police officers, and the repeated movements of his hands toward his satchel, led Denton to suspect it contained contraband, the officer did not claim to have seen a telltale bulge or any part of a weapon. The officer's conclusory reference to a "trend" of finding guns hidden in satchels that summer was not supported by details which would allow the court to "evaluate the reasonableness of [this] particular search[.]" *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Therefore, this alternative argument does not provide a lawful basis for the warrantless search of the satchel.

### III.   Conclusion

The judgment of the Superior Court is hereby.

*Reversed*.