*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CO-0940

MARIO TYRELL MAYE, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2013-CF2-000616)

(Hon. Patricia A. Broderick, Trial Judge)

(Submitted December 5, 2023     Decided May 16, 2024)

*Sicilia C. Englert* was on the brief for appellant.

*Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Mark Hobel*, Assistant United States Attorneys, were on the brief for appellee.

Before BECKWITH, DEAHL, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: Appellant Mario Maye and a group of about seven friends were gathered outside on a block in Southeast Washington, D.C., when a police car approached and parked near the group. Two officers, who had not seen any illegal activity, stepped out of the car and walked toward the group to speak with them. One officer immediately focused on Mr. Maye after observing him adjust

something in his waistband. He approached Mr. Maye and noticed an ordinary pocketknife clipped to his pocket. The officer asked Mr. Maye if Mr. Maye could remove his hand from his pocket while they spoke, and then asked if he could pat down Mr. Maye for weapons. Mr. Maye agreed. During the pat-down, the officer found a bag of cocaine in Mr. Maye's waistband.

Mr. Maye was charged with possession of cocaine with the intent to distribute it, in violation of D.C. Code § 48-904.01(a)(1). He moved to suppress the narcotics as the fruit of an illegal seizure. The trial court denied the motion, finding that Mr. Maye had voluntarily consented to the search. A jury found Mr. Maye guilty of possession with intent to distribute cocaine.

Mr. Maye has appealed the denial of his motion to suppress twice before. We remanded the case each time, concluding that the trial court made insufficient findings for our ultimate review as to whether Mr. Maye's Fourth Amendment rights had been violated. *Maye v. United States*, No. 13-CF-1271, Mem. Op. & J. at 4 (D.C. July 15, 2015); *Maye v. United States*, 260 A.3d 638, 644 (D.C. 2021). Following the second remand, the trial court concluded that Mr. Maye had not been seized before he consented to the pat-down search and that he voluntarily consented to the pat-down.

Mr. Maye now appeals a third time, reiterating his arguments that (1) he was unlawfully seized when an officer requested to search him and thus any consent was invalid as the fruit of an illegal seizure; (2) any purported consent was coerced and involuntary; and (3) even if he had consented, the search exceeded the scope of consent for a weapons pat-down. We are unpersuaded by each of Mr. Maye's contentions and affirm his conviction.

## I. Background

### A.

After a police officer found narcotics on Mr. Maye during a pat-down search, Mr. Maye was charged with possession with intent to distribute cocaine. *Maye v. United States*, 260 A.3d 638, 641 (D.C. 2021). He moved to suppress the cocaine, arguing that he had been illegally seized in violation of the Fourth Amendment before consenting to the search. *Id.* at 641. The evidence at the suppression hearing was as follows.

One evening in January 2013, Officers Sean Kenney and Matthew Jones were on routine patrol in a marked police vehicle in the District of Columbia's Sixth District. *Id.* They came to the 800 block of 51st Street, SE, which they described as a high-crime area known for guns and narcotics-related offenses. *Id.* at 641-42. On

that block, they saw a group of about eight individuals standing near a car parked alongside the curb. *Id.* at 642. Although the officers did not observe any unlawful conduct, they pulled up near the group, parked their police car, and approached to initiate a citizen encounter. *Id.* The officers did not activate their patrol car's siren or emergency lights but were dressed in full police uniform. *Id.*

Officer Kenney's focus immediately turned to Mr. Maye, who had "manipulat[ed] his waistband" with his right hand and placed that same hand in his pocket. *Id.* Officer Kenney walked toward Mr. Maye, noticed an ordinary pocketknife clipped to that same pocket, and asked a few questions. *Id.* First, he asked Mr. Maye if he could "speak to him for a minute," and Mr. Maye responded with "something to the effect of, sure, what's up?" *Id.* Officer Kenney then asked, "while I'm speaking with you, would you mind taking your hand out of your pocket," and Mr. Maye complied. *Id.* Next, he asked, "while I'm speaking with you, do you mind if I pat you down for officer safety for any weapons?" and Mr. Maye replied, "sure, that's fine." *Id.* Mr. Maye placed his hands on the nearby car, and Officer Kenney began patting him down. *Id.* Officer Kenney patted Mr. Maye's waistband and "felt a bulge" that he "immediately recognized" to be packaged narcotics. *Id.* He reached into Mr. Maye's waistband and removed a clear plastic bag containing fifty-five smaller bags of a rock-like substance, which was later confirmed to be cocaine. *Id.*

Mr. Maye and Ronald Hall, a friend of Mr. Maye's at the scene, described quite a different police encounter. *Id.* at 641-42. Mr. Maye claimed that the officers approached the group, asked if they had any weapons, instructed everyone to place their hands on the car, and immediately handcuffed him before he was searched. *Id.* at 642. Mr. Hall testified that the two officers "pulled up" and asked, "who lives here?" *Id.* at 643. Then, Officer Kenney immediately turned to and grabbed Mr. Maye while Officer Jones directed the rest of the group to put their hands on the car. *Id.* Mr. Hall was unsure whether Officer Kenney sought Mr. Maye's permission to conduct a search. *Id.* Finding Officer Kenney's account more consistent and credible, the trial court credited his version of events over the versions offered by Messrs. Maye and Hall. *Id.* at 642-43.

The trial court orally denied Mr. Maye's motion. *Id.* at 643. The entirety of the initial ruling was as follows:

> Listening to all the testimony, I do find that I credit Officer Kenney. I'm not overly impressed with Officer Jones. Mr. Hall was credible, too, but inconsistent, really, in the details that he was able to provide, but he didn't provide a lot of details.
>
> I find that Officer Kenney and Officer Jones were more consistent with each other than Mr. Hall and Mr. Maye. For that reason, I do give more credit to Officer Kenney and I do find that there was consent in this case. So I'll deny the motion.

*Id.*

The case proceeded to trial, and a jury found Mr. Maye guilty of possession with intent to distribute cocaine. *Id.*

**B.**

In his first appeal, Mr. Maye argued that the trial court committed various errors in denying his suppression motion. *Id.* We did not resolve Mr. Maye's legal arguments because the trial court's findings were insufficient to permit meaningful appellate review. *Maye v. United States*, No. 13-CF-1271, Mem. Op. & J. at 3-4 (D.C. July 15, 2015). We remanded the case for a clearer determination whether Mr. Maye's consent was voluntary, whether it was the product of an illegal seizure, and whether the seizure of drugs exceeded the scope of consent. *Id.* at 4.

On remand, the trial court issued a written order denying Mr. Maye's suppression motion. *Maye*, 260 A.3d at 643. The court articulated two alternative bases for its ruling. *Id.* First, it concluded that the officers had reasonable, articulable suspicion to seize Mr. Maye and pat him down for weapons under *Terry v. Ohio*, 392 U.S. 1 (1968), and therefore consent was immaterial. *Maye*, 260 A.3d at 643. Second, the court concluded, in the alternative, that Mr. Maye voluntarily consented to the search. *Id.* In support of this determination, the trial court found, among other things, that when Officers Kenney and Jones approached the group, they stated "that no one in the group was in trouble" and that, contrary to Mr. Maye's

testimony, Mr. Maye had not been ordered to place his hands on the vehicle and immediately handcuffed. *Id.* at 651-52.

Mr. Maye appealed a second time. We concluded that, if Mr. Maye had in fact been seized, reasonable, articulable suspicion to justify the seizure was lacking. *Id.* at 644. We observed that "there is nothing suspicious about gathering with a small group of friends outside at around 7:15 in the evening," "[Mr.] Maye's hand movements . . . were innocuous," and the presence of an ordinary pocketknife, which Officer Kenney did not suspect was illegal, did not give rise to reasonable suspicion as required for an investigatory seizure and protective pat-down. *Id.*

As to the court's consent ruling, we concluded that if Mr. Maye had been seized at the time he agreed to a search, then any consent offered was "tainted by the illegal seizure" and thus invalid. *Id.* at 651. We declined to resolve the issue, however, because the factual findings as to whether Mr. Maye was seized at the time of purported consent were, again, insufficient. *Id.* Thus, we directed the trial court to determine whether the officers had directed the entire group to put their hands on the car—a circumstance to which Messrs. Maye and Hall testified but that was absent from Officer Kenney's testimony. *Id.* We noted the significance of this fact because "a reasonable person in [Mr.] Maye's shoes might think it material, when assessing whether they are free to terminate a police encounter, if seven of their

friends have likewise been directed to assume the position and then complied." *Id.* Additionally, we highlighted two potential factual inconsistencies for the trial court to review on remand: the court's suggestion that the officers had specified that no one was in trouble, which was not supported by any testimony, and its dismissal of Mr. Maye's testimony that he "was ordered to place his hands on the . . . vehicle and was immediately handcuffed." *Id.* at 651-52.

In its order on the second remand, the trial court made additional findings and ruled that Mr. Maye had not been seized before agreeing to the pat-down and that he had voluntarily consented to the search. As to the factual issues we had identified, the trial court found that the officers did not order the entire group to place their hands on the car. The court explained that Officer Kenney's testimony, which it credited, established that Officer Kenney had requested Mr. Maye to place his hands on the car; his testimony and Gerstein affidavit[1] showed no substantial interaction with other group members; and Officer Jones's testimony indicated that only Messrs. Maye and Hall had placed their hands on the car. Also, relying solely on Officer Kenney's Gerstein affidavit, which had been introduced as an exhibit but not admitted at the suppression hearing, *see infra* n.2, the trial court found "that one of the officers told Mr. Maye's group that no one was in trouble." After considering

---

[1] *See Gerstein v. Pugh*, 420 U.S. 103 (1975).

the totality of the circumstances, the trial court ruled that Mr. Maye had not been seized before he consented to the pat-down search and that his consent was voluntary.

Mr. Maye timely appealed.

## II.    Analysis

In this third appeal from the trial court's denial of his motion to suppress, Mr. Maye contends that (1) he was unreasonably seized when Officer Kenney asked if he could conduct a pat-down search for weapons; (2) any purported consent to the pat-down was coerced and involuntary; and (3) the search exceeded the scope of consent for a weapons pat-down when Officer Kenney removed the narcotics from Mr. Maye's waistband. We are unpersuaded and hold that (1) Mr. Maye was not seized but rather was engaging in a consensual encounter when Officer Kenney requested a pat-down search; (2) Mr. Maye voluntarily consented to the pat-down; and (3) the pat-down did not exceed the scope of the consented-to weapons frisk because Officer Kenney had probable cause to seize the narcotics under the plain-feel exception to the Fourth Amendment's warrant requirement.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches and seizures conducted outside

the judicial process . . . are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (internal quotation omitted). "These exceptions include a search conducted with the consent of the person being searched." *Henderson v. United States*, 276 A.3d 484, 489 (D.C. 2022) (internal quotation omitted).

"In reviewing a trial court's ruling on a suppression motion, 'we accept the trial court's findings of fact unless they are clearly erroneous[,] and we review the facts and reasonable inferences therefrom in the light most favorable to the prevailing party.'" *United States v. Bumphus*, 227 A.3d 559, 563-64 (D.C. 2020) (quoting *Hooks v. United States*, 208 A.3d 741, 745 (D.C. 2019) (alteration in original)). "We review the trial court's legal conclusions, including whether the seizure was unreasonable under the Fourth Amendment and whether exclusion was required, de novo." *Id.*

## A.    Mr. Maye Was Not Seized Under the Fourth Amendment

Mr. Maye argues that his interaction with Officer Kenney was not consensual and that he was seized in violation of the Fourth Amendment when Officer Kenney asked to search Mr. Maye "for officer safety" because, under the circumstances, a

reasonable person in his position would not have felt free to leave or end the encounter. We disagree.

## 1.    Additional Background

In its order following the second remand, the trial court made further findings necessary to determine whether Mr. Maye was seized when he agreed to a pat-down search. Responding to the questions we posed on remand, the court, relying on Officer Kenney's Gerstein affidavit, found that an officer told Mr. Maye's group that no one was in trouble; and, relying on Officer Kenney's affidavit and suppression hearing testimony, found that the officers did not order the entire group to place their hands on the car. The trial court more generally concluded that, under the totality of the circumstances, Mr. Maye was not seized before the pat-down search because a reasonable person in Mr. Maye's position would have felt free to end the encounter. The court relied on the following findings for its seizure determination.

- Mr. Maye was on a public sidewalk with his friends and had full view of a neighbor grilling nearby and the police did not block his path.

- Officer Kenney did not issue a command and did not subject Mr. Maye to repeated or prolonged questioning. The few questions Officer Kenney asked included: "Do you mind if I speak with you for a minute?"; "While I'm speaking with you, would you mind taking your hand out of your pocket?"; "While I'm speaking with you, do you mind if I pat you down for officer safety for any weapons?" The questions were neither "in the form of a command [n]or particularly intimidating." Although Officer Kenney also

asked whether Mr. Maye would place his hands on the car to facilitate the pat-down, at that point, Mr. Maye had already consented to the search.

- The officers did not direct everyone in Mr. Maye's group to place their hands on the car.

- Officer Jones had Mr. Hall place his hands on the car, but Mr. Hall "was not coerced into" doing so and testified that he felt he could leave. Mr. Maye did not observe much of Officer Jones's interaction with Mr. Hall.

- The two officers were armed and in uniform but did not activate police lights or sirens and did not handle their weapons in a threatening manner.

## 2.    Discussion

"A constitutionally permissible encounter between a police officer and an individual can either be a 'consensual encounter, which does not require any level of suspicion prior to initiation,' an 'investigative detention, which if nonconsensual, must be supported by a reasonable, articulable suspicion of criminal activity prior to initiation'; or an 'arrest, which must be supported by probable cause prior to initiation.'" *Dozier v. United States*, 220 A.3d 933, 939 (D.C. 2019) (quoting *Gordon v. United States*, 120 A.3d 73, 78 (D.C. 2015)) (brackets omitted). We have already determined that the officers did not have reasonable, articulable suspicion to seize Mr. Maye at the outset. *Maye*, 260 A.3d at 644-50. Thus, whether Mr. Maye's Fourth Amendment rights were violated hinges on whether he engaged in a consensual encounter or was seized.

A seizure under the Fourth Amendment "does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Rather, a seizure occurs when an officer has restrained one's liberty "by means of physical force or show of authority." *Jones v. United States*, 154 A.3d 591, 594 (D.C. 2017). "[A] show of authority need not be expressly communicated through verbal commands for there to be a seizure." *Crews v. United States*, 263 A.3d 128, 136 (D.C. 2021).

The crucial test in deciding whether a person has been seized is whether, under the totality of the circumstances, "police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439; *see Hooks*, 208 A.3d at 746 n.11 ("Another formulation of the test asks whether a reasonable person would have felt 'free to leave,' . . . but the protections of the Fourth Amendment extend to situations where a citizen has no desire to go elsewhere and instead simply wishes to decline an encounter with the police."). "An encounter between a police officer and an individual may begin consensually and then, because of the officer's show of authority or some other indication that the individual is not free to leave, become a nonconsensual seizure . . . ." *Towles v. United States*, 115 A.3d 1222, 1228 (D.C. 2015). "Consent obtained after an illegal seizure is invalid . . . ." *Id.* (internal quotation omitted).

Factors that might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Other relevant factors might include whether

> (1) the individual "is by himself" in the area so that the police presence was apparently focused exclusively on him; (2) the encounter is in a place "that is secluded or out of public sight"; (3) the officers are uniformed or have their weapons visible; (4) the officers have blocked the individual's potential exit paths or "means of egress"; (5) the officers' questions are "accusatory"; and (6) the officers repeat accusatory questions in the face of an initial denial, signaling that they have "refused to accept" the answer given.

*T.W. v. United States*, 292 A.3d 790, 795 (D.C. 2023) (internal citations omitted). On the other hand, a "brief inquiry in a non-hectoring, conversational tone or casual manner, unaccompanied by intimidating or coercive police conduct, likely would not rise to the level of a seizure." *Golden v. United States*, 248 A.3d 925, 935 (D.C. 2021).

**a.**

As an initial matter, Mr. Maye argues that the trial court erroneously relied upon Officer Kenney's Gerstein affidavit as the basis for its finding that "one of the officers told Mr. Maye's group that no one was in trouble" because the affidavit was not admitted into evidence, the government failed to lay a foundation for its admission, and it lacked sufficient details to be reliable. We decline to decide that question because we conclude that whether an officer said that no one was in trouble was not material to the trial court's ultimate consensual-encounter determination and does not factor into our affirmance of that determination.

In its written order denying suppression following this court's first remand, the trial court ruled that the officers' interaction with Mr. Maye was a consensual encounter. As one of the facts in support of that determination, the court found that the officers "specified that no one in the group was in trouble and that they had stopped to see what the group was doing in the area." The court also relied on findings that "the interaction with the entire group was conversational and non-threatening"; that "the officers did not make a show of authority or act in a manner that would indicate compliance by any member of the group was required"; that the officers "did not activate their emergency equipment, did not have the vehicle's sirens on, did not have their hands on their weapons, and spoke with a

conversational tone"; and that no facts supported "the notion that the officer[s']

demeanor or tone was threatening so to render the group incapable of ending the

interaction."

In the second appeal, this court observed that the trial court "may have gotten

wrong" the finding that officers said that no one was in trouble because no such

testimony was presented at the suppression hearing or the trial. *Maye*, 260 A.3d at

651. In its order on the second remand, in the section of the order recounting the

evidence in the record, the trial court explained that the evidence came from

Officer Kenney's Gerstein affidavit and reiterated its finding that "at least one of the

officers did inform the group that no one was in trouble."[2] In its analysis section,

however, the trial court did not repeat or rely on that finding, instead basing its

consensual-encounter determination on the factors listed above, *supra* at pp. 11-12.

In our view, even if the trial court clearly erred in finding that an officer said

that no one was in trouble because there was no admitted evidence to support that

finding, neither reversal nor a remand is required on that basis alone. The trial court,

for its part, relied on a totality of circumstances in determining that the encounter

---

[2] The Gerstein affidavit was not admitted into evidence at the suppression hearing but was introduced as a government exhibit and used by both parties for indirect purposes. The specific statement in the affidavit the trial court relied on indicated that, upon their arrival, "[t]he [o]fficers advised the subjects that no one was in trouble and that they just stopped in the block to see what was going on."

was consensual, of which the "trouble" line was one part (to the extent it *was* a part of the court's legal analysis in the second remand order). And even if the trial court's determination that the interaction was not intimidating or accusatory played a significant role in its totality analysis and the "trouble" line played a part in that determination, the court supported the determination with multiple other facts: that the officers did not block Mr. Maye's path, asked only a few questions, did not phrase their questions in the form of commands, did not ask Mr. Maye if he had weapons or drugs, did not activate their patrol car's lights or sirens, and did not draw or reach for their weapons. Thus, in light of the trial court's discussion of the bases for its ruling, it does not appear to us that the court "was swayed by erroneous factual matter." *In re C.J. III*, 514 A.2d 460, 464 (D.C. 1986). For our part, we assume the trial court's finding was clearly erroneous and therefore decline to accept it. *See Bumphus*, 227 A.3d at 563. Applying de novo review, we may nonetheless affirm if the remaining factual findings support a determination that the encounter was consensual. Accordingly, we proceed to that analysis.

**b.**

We conclude that Mr. Maye was not seized when Officer Kenney asked to pat him down for weapons. First, the officers did not begin the encounter by manifesting a show of authority. Mr. Maye was on a public, open sidewalk with about seven

friends, and the officers did not block Mr. Maye's path. *See Jones*, 154 A.3d at 596 (a police encounter is "more intimidating if the person is by himself, if more than one officer is present, or if the encounter occurs in a location that is secluded or out of public sight"); *Brown v. United States*, 983 A.2d 1023, 1025-26 (D.C. 2009) (lower show of authority where two armed, uniformed officers approached a group of five or six men on a public sidewalk). Nor was the officers' approach threatening. They did not activate their patrol car's siren or emergency lights, reach for their weapons, or issue orders to the group. The officers casually walked toward Mr. Maye and his friends and spoke in a conversational tone. Although Officer Jones asked Mr. Hall to place his hands on the car, Mr. Hall voluntarily complied and testified that he felt free to leave when the officers initially approached.

Second, Officer Kenney's requests to Mr. Maye would not have indicated to a reasonable person that they were not free to terminate the encounter. Before initiating the pat-down, Officer Kenney asked if Mr. Maye could speak with him and if he could take his hand out of his pocket. Officer Kenney asked these questions in a conversational tone and nonthreatening manner, using permissive language and "do you mind" or "would you mind" before each question. Mr. Maye answered in the affirmative and removed his hand from his pocket. Nothing about this manner of questioning, coupled with the officers' casual approach (even assuming they did

not say "no one is in trouble"), suggests that Mr. Maye's freedom to terminate the encounter was conditioned on his compliance with the requests. *See Kelly v. United States*, 580 A.2d 1282, 1286 (D.C. 1990) (placing significance on the officers' courteous questions and conversational tone in determining that the defendant was not seized); *United States v. Barnes*, 496 A.2d 1040, 1045 (D.C. 1985) (officer's request that defendant remove his hands from his pockets, "which was no more intrusive than a request for identification," followed by two nonintimidating questions, asked without threats or indication of severe tone of voice, did not convert the consensual encounter into a seizure).[3]

Nor did the specific request to pat down Mr. Maye for weapons result in a seizure. Although an interaction is more likely a seizure if an officer asks a person if they have weapons or narcotics, *see Golden*, 248 A.3d at 937, merely asking about weapons or narcotics is insufficient to establish a seizure, *see Kelly*, 580 A.2d at 1284, 1286 (officer's single accusatory question regarding whether the defendant

---

[3] We are mindful that a reasonable person might still perceive an officer's request, even if made in a "conversational tone, without orders, shouting, or threats," as coercive in context. *Dozier*, 220 A.3d at 946. Indeed, we have deemed seizures as violative of the Fourth Amendment despite officers' conversational and cordial tones during an interaction. *Id.* at 946-47; *Golden*, 248 A.3d at 932; *T.W.*, 292 A.3d at 803. Here, however, nothing else about the context of the encounter suggests that it was coercive or particularly intimidating.

had drugs, asked before a request to search the defendant's bag, without more, did not constitute a seizure).

In the absence of other intimidating police conduct toward Mr. Maye or his group of friends, we are unpersuaded that a reasonable person would have felt unable to decline Officer Kenney's pat-down request and continue about their business.[4] *Cf. Brown*, 983 A.2d at 1026 (no seizure where two armed officers approached a group of five or six individuals on a public sidewalk and an officer asked defendant in a normal tone and without threatening gestures whether he had guns, drugs, or narcotics). Therefore, we conclude that Mr. Maye was not unlawfully seized before consenting to a pat-down; he engaged in a consensual encounter, which he was free to terminate at any time.

---

[4] Mr. Maye also argues that his race is a significant factor in determining whether he was seized. In *Dozier* we noted the relevance of race in such considerations and explained that Mr. Dozier, an African-American man facing armed policemen in a high-crime area, had reason to be "especially apprehensive." *Id.* at 220 A.3d at 943-45. Here, we decline to consider this factor because it appears that Mr. Maye's race was not established at the suppression hearing or at trial. *See id.* at 949 (McLeese, J. concurring); *Golden*, 248 A.3d at 937 n.31 (noting the relevance but declining to consider appellant's race because it was not raised in the proceedings below). Furthermore, given the circumstances of the encounter here, our determination that Mr. Maye was not seized would be the same even if we were to consider this factor.

### B. Consent

Mr. Maye argues that the government failed to prove that he validly consented to a pat-down search. His argument, however, rests largely on the same circumstances he marshalled in support of his contention that he was illegally seized. We affirm the trial court's finding that Mr. Maye voluntarily consented to the pat-down. *See Henderson*, 276 A.3d at 489 ("The trial court's determination that appellant consented voluntarily is a factual finding that we will affirm unless it is clearly erroneous.").

### 1. Additional Background

In its order following the first remand, the trial court credited Officer Kenney's testimony and found that Mr. Maye "unequivocally granted" consent to the pat-down search. The court noted that Officer Kenney's account that he had asked for and Mr. Maye provided consent was corroborated while Mr. Maye's contrary account was not.

In Mr. Maye's second appeal, we agreed with his contention that any seizure under *Terry v. Ohio*, 392 U.S. 1 (1968), would have been unlawful and any consent offered "would not be free from the taint of unlawful detention." *Maye*, 260 A.3d at 641 (quoting *Jones*, 154 A.3d at 598 n.20). Thus, we remanded again for further

findings because the trial court had failed to address the "dispositive question of whether [Mr.] Maye was seized at the moment of his purported consent." *Id.* We noted that if Mr. Maye had not been seized at this juncture, "then the encounter was consensual so that [Mr.] Maye's consent was valid and Officer Kenney could search him without intruding on his Fourth Amendment rights." *Id.* at 650-51.

In its order following the second remand, after concluding that Mr. Maye had not been seized, the trial court found "no reason to alter its previous finding that Mr. Maye voluntarily consented to the pat-down." The court briefly highlighted facts supporting its determination:

> Officer Kenney and Mr. Maye mutually walked toward each other for the pat-down. Mr. Maye demonstrated voluntariness by walking toward the officer and placing his hands on the car to facilitate the pat-down. Officer Kenney had no physical contact with Mr. Maye until the actual pat-down. Mr. Maye's demeanor shortly after the pat-down was also inconsistent with that of someone whose will was overborne. When Officer Kenney discovered the narcotics in Mr. Maye's waistband area, Mr. Maye laughed and joked that the officer had felt his testicles.

Accordingly, the court reaffirmed its earlier finding that Mr. Maye had voluntarily consented to the search.

## 2.    Discussion

Mr. Maye's contention that he was searched without valid consent largely rests on the same bases supporting his claim that he was unlawfully seized and thus "did not feel free to refuse" Officer Kenney's pat-down request.  We disagree and see no reason to disturb the trial court's factual determination that Mr. Maye's consent was voluntary.[5]  *See Kelly*, 580 A.2d at 1288 ("Because [the] initial premise [that the defendant was seized] is unsound, so is the claim of invalid consent."); *Maye*, 260 A.3d at 650-51 (noting that if Mr. Maye was not seized at the time he agreed to a pat-down, "then the encounter was consensual so that [Mr.] Maye's consent was valid").  Officer Kenney's testimony—which was corroborated by Officer Jones and credited by the trial court—indicates that Mr. Maye's oral consent was affirmatively given without hesitation.  Conversely, the court specifically discredited Mr. Maye's testimony regarding consent, noting that "even his own

---

[5] As noted, in our prior decision, we stated that if Mr. Maye had not been seized, "then the encounter was consensual so that [Mr.] Maye's consent was valid and Officer Kenney could search him without intruding on his Fourth Amendment rights."  *Maye*, 260 A.3d at 650-51.  The government asserts that Mr. Maye's renewed consent argument is barred by the law-of-the-case doctrine due to this language.  Although we strongly suggested in Mr. Maye's prior appeal that if the encounter here was consensual then any consent was valid, it is not clear to us that we decided that issue expressly or even by necessary implication.  Accordingly, we decline in our discretion to apply the law-of-the-case doctrine to bar Mr. Maye's relitigation of the issue.  *See In re Robinson*, 216 A.3d 887, 890 (D.C. 2019) ("the law-of-the-case doctrine is discretionary").

witness, Mr. Ronald Hall, could not corroborate him." As discussed above, Mr. Maye was not seized, and there was no credited evidence indicating that he was coerced. We therefore affirm the trial court's finding that Mr. Maye voluntarily consented to a pat-down search.

## C. Scope of Search

Mr. Maye argues that because any purported consent for the search was limited to a pat-down for weapons and Officer Kenney knew that the bulge in Mr. Maye's waistband was not a weapon, Officer Kenney unlawfully expanded the scope of the search by removing the object. We disagree. The search was within the bounds of a protective pat-down for weapons and Officer Kenney then acquired probable cause to seize the cocaine he felt under the plain-feel exception to the Fourth Amendment's warrant requirement.

"To determine the scope of consent, we apply a standard of objective reasonableness, asking what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Henderson*, 276 A.3d at 490-91 (internal quotation omitted); *see United States v. Chrispin*, 181 F. App'x 935, 939 (11th Cir. 2006) ("the extent of a consensual search must be confined to the scope of the consent given"). Mr. Maye consented to a "pat . . . down for officer safety for any weapons," *Maye*, 260 A.3d at 642, which is coextensive with the scope

of a *Terry* frisk, *see* 392 U.S. at 26 (protective search is limited "to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby"). *Cf. United States v. Rodney*, 956 F.2d 295, 298 (D.C. Cir. 1992) (holding that appellant's "generalized consent to a body search for drugs" had "authorized the kind of 'traditional [*Terry*] frisk search' undertaken here," which was "not unusually intrusive" and involved "a continuous sweeping motion over [appellant's] outer garments, including . . . his crotch area").

Although Mr. Maye's consent was limited to a pat-down for weapons, the "plain feel" exception permits the seizure of an object detected during a lawful *Terry* search if the incriminating nature of the object is "immediately apparent." *Dickerson*, 508 U.S. at 375-76. "'Immediately apparent' for purposes of plain feel analysis does not mean that an officer must know for certain that the item felt is contraband, only that there is probable cause to associate the item with criminal activity." *Ball v. United States*, 803 A.2d 971, 975 (D.C. 2002).

The "contour or mass" of an item may make its incriminating character immediately apparent. *Dickerson*, 508 U.S. at 375. For items with more ambiguous shapes like drug packages, an officer's training and experience can inform the officer's perception that the "contour or mass" matches the typical characteristics of drug packaging. *(Kenneth) Dickerson*, 677 A.2d 509, 512 (D.C. 1996) (quoting

*Dickerson*, 508 U.S. at 375). The exception does not, however, permit an item to be seized if its incriminating nature is discovered after "squeezing, sliding [or] otherwise manipulating the contents of the defendant's pocket." *Id.* (quoting *Dickerson*, 508 U.S. at 378). This kind of evidentiary search would "overstep[ ] the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*." *Dickerson*, 508 U.S. at 378 (quoting *Terry*, 392 U.S. at 26).

Here, the pat-down was within the bounds of *Terry* (and Mr. Maye's consent): it was limited to the outer layer of Mr. Maye's clothes and there are "no facts that indicate Officer Kenney unzipped garments or altered [Mr. Maye's] clothing in any way during the pat-down."

Officer Kenney testified that in the course of patting down Mr. Maye's waistband he felt a bulge and immediately recognized it as packaged narcotics based on his training and experience with hundreds of narcotics-related arrests. There was no evidence that the bulge's incriminating character was revealed only after a more intrusive search, such as squeezing, fondling, or otherwise manipulating the object. Accordingly, there was "no invasion of [Mr. Maye's] privacy beyond that already authorized by the officer's search for weapons," *Dickerson*, 508 U.S. at 367, and the seizure of cocaine was therefore permissible under the plain-feel exception. *See Cox v. United States*, 999 A.2d 63, 67 n.3 (D.C. 2010) (holding that the officer lawfully

seized a bag of cocaine during a *Terry* pat-down where the officer immediately felt a bag and, without squeezing or manipulating it, knew it was packaged narcotics because he had felt similar objects "over a hundred times easy").

Having rejected all of Mr. Maye's Fourth Amendment claims, we conclude that the trial court did not err in denying his motion to suppress.

## III.   Conclusion

For all of the foregoing reasons, we affirm Mr. Maye's conviction.

*So ordered.*